LAMAR COUNTY *v*. TALLY & MAYSON.

[77 South. 299, In Banc.]

1. ATTORNEY AND CLIENT. *Compensation. Compromise.*
   Where the board of supervisors of a county contracted to pay attorney's compensation only in the event that they successfully resisted the payment of certain county warrants and the circuit court in which the suit was brought to collect such warrants decided adversely to the county, and the board of supervisors of the county, over the objections of the attorneys who had taken an appeal, compromised the case. In such case the attorneys were not entitled to compensation, since the litigation did not terminate successfully for the county according to the terms of the contract with the attorneys.

2. SAME.
   In such case the board of supervisors had the right to control the litigation and dismiss the appeal and compromise the suit, if it deemed it advisable, and it must be assumed where the record is silent as to the matter, that the determination by the circuit court adverse to the county's interest was correct.

3. COUNTIES. *Contracts. Validity.*
   A county must act by order entered upon the minutes of its board of supervisors, in reference to its contracts, and where a contract is made it can only be varied by an order entered upon the minutes of the board.

4. COUNTIES. *Contracts. Board of supervisors.*

The board of supervisors being trustees of the public cannot divest itself of the right to control litigation against the county.

APPEAL from the circuit court of Lamar county.

HON. A. E. WEATHERSBY, Judge.

Claim by Tally & Mayson, attorney, against Lamar County. The claim being denied by the board of supervisors, claimants appeal to the circuit court, where judgment was rendered for claimants and the county appeals.

The facts are fully stated in the opinion of the court.

*Hathorn & Hathorn,* for appellants.

Our first contention is that under the contract or order of the board exhibited by appellees, if their claim is being asserted under it, they are not entitled to attorneys' fees, for the reason that the suit of the *White Company* v. *John I. Cook, Treasure,* was not "successfully terminated in favor of said treasurer." The fact is the suit was lost and under appellee's contract they were entitled to no compensation at all.

The burden is of course on appellees show by a preponderance of the evidence, everything necessary to establish their claim and the same rule applies in presenting to the board of supervisors as would in a court of law. Have they met the burden?

The contract says: "It is hereby ordered that Tally and Mayson be employed to represent and defend the said treasurer against any action filed against him to compel the payment of said warrant."

There is nothing in the contract to indicate that the case was to be carried to the supreme court, and we are sure that if the case had successfully terminated in favor of the treasurer in the circuit court, that under this contract appellees would have been entitled to the five hundred dollars appropriated and certainly

so unless it had been clearly shown that the intention of the parties in contracting was that the case must be defended on through all the higher courts.

We insist however that instead of appellees showing that they were entitled to have the court of last resort pass upon the case before they would be barred from recovery under their contract, they have shown conclusively that it was never intended either by themselves or by appellants that they should prosecute the appeal to the supreme court. The record shows that the district attorney, whose official duty it was to represent appellants, prosecuted the appeal, the only thing being done by him being the filing of a petition for appeal, and notice to the stenographer, and that the board abandoned the appeal before anything was done further.

Certainly defendants had a right not to appeal the cases if they wished, and they were under no obligation, either moral, legal, or contractual, to appeal the cases in order that it might be determined whether or not appellees had earned their fee under their contract; especially since the contract does not specifically provide for the appeal. Who has the right to say where the cases shall be stopped, the defendants, or appellees? Appellants and the defendants to the suits had the exclusive right to abandon the appeals, and appellees, under the facts as shown by this record, have no just cause of complaint.

If they can recover at all, they must recover on the contract, and this they cannot do, and, as we understand from Mr. Mayson's testimony, they are not even attempting to do. They cannot recover in the case as disclosed by this record on *quantum meruit.*

"The board of supervisors can only bind the county by an affirmative act within the scope of its authority. Its contracts must be evidence by an entry on its minutes, and the same cannot be varied by proof that the party dealing with the board was led into a misunder-

standing of the contract by some members of the board, who in open session, when the contract was entered into made incorrect statements to him as to its terms. *Bridges* v. *Clay County,* 58 Miss. 817.

The case of *Groton Bridge & Manufacturing Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711, covers the foregoing question very fully, and goes at length to expound the law, and a reading of it must convince the court that appellees cannot recover in this case on *quantum meruit.*

The court in that case, quoting from *Delafield* v. *Illinois,* 2 Hill. 175 and *Wolcott* v. *Lawrence County,* 26 Mo. 272, with approval says: "The petition in this case does not aver a contract of any kind with the county court, but plaintiff seeks to recover upon a *quantum meruit.* In our opinion the county is not liable upon an implied promise. The acceptance of the building by the county court did not help the plaintiff, for the ratification must come from the principal."

In *Marion County* v. *Woulard.* 27 So. 619, where Woulard was suing to recover for services as a quarantine guard, the court said, in reversing the judgment of the circuit court: "Nor was there any contract made on the minutes of the board, nor was there on said minutes an order, establishing local quarantine, etc.," and citing thereunder with approval *Bridges* v. *Clay County, supra.*

11 Cyc. page 397, says: "County boards are unsually required to keep a regular record of their proceedings at each session, and when they are required to keep a regular record of their proceedings they can speek only by such record." Also on page 398: "It is the usual rule that the action of county boards, in order to be binding upon the county, must be shown by the record of their proceedings. It has been so held in respect to contracts made by them.

Certainly appellees would have to show, by a preponderance of the evidence that appellants have not lived up to the contract before it could be laid aside and a recovery had on *quantum meruit,* if such recovery could be had against the county in this case at all, and this they have wholly failed to do. The court will bear in mind that this recovery is not based on a verbal contract of the board or a verbal understanding which was not placed on the minutes, but on *quantum meruit* for services which the board did not consent to at all, except it be the contract which appellees say they were prevented from carrying out, hence the case is clearly distinguished from *Crump* v. *Colfax County,* 52 Miss. 107.

We earnestly insist that, viewing this case from its every angle and taking the entire record, this court will reverse the judgment of the circuit court and enter an order here affirming the judgment of the board of supervisors.

*J. W. Flowers,* for appellee.

Under section 309, a county may sue and be sued. When it is sued or when there is a suit which involves the county's interests and the county is in court directly or indirectly, it is subject to the same general rules that control litigants of other kinds. A county should not be embarrassed in making compromises. It should be able to settle cases just as other litigants settle them when they think best. *State* v. *Fragaicomo,* 71 Miss. 425, 15 So. 798; *Eastman-Gardner Company* v. *Adams,* 58 So. 221.

When a county makes a contract like this that was made with these appellees, that is, to pay a fee provided certain litigation shall be carried to a successful conclusion the county does not relinquish to the attorneys its right to compromise the litigation. It would not

be just, however, to allow to a county the right to un-
dermine its contract by the exercise of this inherent
·right to compromise. The county should not be per-
mitted to exercise this undoubted right at the expense
of the attorneys already engaged to prosecute the
litigation to the end. To engage attorneys and permit
them to go part of the way and perform part of the
services under an agreement that they shall prosecute
to the end and be paid only in the event their services
are successful and then to settle the case over their
protest would be unfairness and injustice approaching
fraud if the attorneys are left without remedy. Com-
promises are usually brought about by services of
the attorneys. In most instances of this nature the
court would get the benefit of the services in the com-
promise. The county gets the benefit of the services
before the point is reached at which the attorneys might
under their conditional contract demand their compen-
sation.

'It is argued by counsel for appellant that since there
was a contract with these attorneys which was not
carried out then they have no contract upon which to
stand, and that since they have no contract under the
terms of which they can recover, they cannot recover
the value of their services. Three or four authorities
are cited which we will mention later. However, the
general rule is that where a county board has authority
to make a contract and one is undertaken to be made,
though irregularly made, and the work is done by the
person with whom the board is dealing, the county will
have to pay the reasonable value of the services ren-
dered. See *State of Minnesota, ex rel.* v. *Clarke,* 116
Minn. 500, 134 N. W. 129; 39 L. R. A. (N. S.) 43, and
note; also note to *Perry Ice Company* v. *Perry,* 29 Okla.
593, 39 L. R. A. (N. S.) 72. These notes refer to a
more extensive one beginning on page 1117 of 27 L. R.
A. (N. S.).

In support of the said general rule there are cited two Mississippi cases. One of these is *Methodist Church* v. *Vicksburg,* 50 Miss. 601. The other case cited in the said note in 27 L. R. A. (N. S.) is *Crump* v. *Colfax County,* 52 Miss. 107.

This holding of the court is distinguishable from that in *Board of Supervisors* v. *Patrick,* 54 Miss. 240, in which case a contract to build a courthouse was publicly let after notice and the contract was made based upon the specifications on file at the time. The contractors after the building was completed presented a claim for two thousand dollars worth of extra work and material; of course if the board had to let the contract publicly in the first instance and according to specifications on file and the contract was made on the basis of these specifications neither the individual members of the board nor the commissioner in charge of the work could authorize any variations from the contract in such manner as to bind the county. The same thing may be said of the decision in *Bridges* v. *Clay County,* 58 Miss. 817, wherein it appeared that public bridges had been let according to plans and specifications and the contractors claimed that they misunderstood the specifications and undertook the contract at a less sum than they otherwise would.

The case of *Groton Bridge Company* v. *Warren County,* 31 So. 711, 80 Miss. 214, cited by counsel for appellant deals with the same situation. There was a contract which had been made in the manner provided by law and the law required that there be a public letting. The contract was to build a bridge over Big Black River. It was found by the builder that one of the piers had to be built higher than the specifications called for. With the consent of the engineer and the president of the board the extra work was done. And the court said the board had no authority to pay for the extra work.

The case of *Marion County* v. *Woulard,* 27 So. 619,
throws no light on the question. It does not appear
that the quarantine guard had been provided for by any
order of the board. In fact there had been no local
quarantine established. The authority of the board to
arrange for guards had not been created by the nec-
essary preliminary local legislation.

The courthouse and bridge cases above mentioned
had to construe what is now section 361, of the Code.
This was section 340 of the Code of 1892 and section
2179 of the Code of 1880. The form of it is section 1388
of the Code of 1871 is in a general way the same.
Such contracts have to be let, after due notice to the
public to the highest bidder. It will not be contended
that the work which it is desired to employ an attorney
to do should be shown by specifications and notice of
the purpose to let the contract published and the con-
tract to do the work let by public outcry.

In *Land* v. *Allen,* 40 So. 117, the facts shown differ
from these in the case at bar only in that there was an
order on the minutes approving the action of the county
attorneys in bringing the suit and fixing the amount of
the fee to be paid. In the instant case the difference
is very slight.

The case of *Hall, et al.* v. *Gunter & Gunter* (Ala.), 57
So. 155, presents a state of facts very similar to these
now before this court. See note on page 92, 6 L. R. A.
(N. S.).

Of course we are assuming here that when a munici-
pal corporation makes a valid contract and then itself
renders performance on the part of the other contract-
ing party impossible, it must respond just as any other
litigant would have responded.

It will be noted too that the statute authorizing boards
of supervisors to employ attorneys does not require
even that the compensation be fixed in advance. The

attorneys engaged shall be paid reasonable compensation for their services.

A county has to do right like any body else. It has to pay for what it gets. It got the benefit of the services of these lawyers and coined this benefit into what they considered an advantage to their liking. It certainly cannot be said that the county may thus get their services, use the benefit of them, prevent the further and full performance of the contract and then successfully refuse to pay anything.

A distinction appears to be recognized by our court between contracts which have to be publicly let to the best bidder and contracts which do not have to be so let. At least it is true that this court has not so rigidly enforced the technical rules when dealing with transactions of the county pertaining to these smaller matters.

Whether the doctrine of estoppel is invoked or of ratification, or of implied contracts, the result is worked out so as to do justice where the other party has given the county in good faith, labor, material or services. As illustrated by the *Crump case, supra,* and by *Land* v. *Allen, supra.* See also 7 Ruling Case Law, pp. 946-947.

What these appellees did was expressly authorized and was expressly ratified. There was an order put on the minutes before and after. There was nothing left unsettled except the amount of the compensation. And this was rendered uncertain by the act of the board. The statute says the board may employ counsel and pay reasonable compensation. It is undisputed that the fee charged here is reasonable. The circuit judge so held.

It is clear that the judgment of the lower court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Tally & Mayson, attorneys, filed a claim with Lamar county for five hundred dollars, claim being in the following words:

"Lamar County, Debtor, to

Tally & Mayson, ....... $500. 00

"For the value of services rendered Lamar county in the suits lately pending in the circuit court of Lamar county, wherein the White Company was plaintiff, and John I. Cook, treasurer of Lamar county, defendant in one suit, and R. L. McNair, clerk of the board, defendant in the other suit."

This claim was filed under contract made by the board of supervisors at its January, 1916, meeting, which contract is in the following words, as evidenced by the minutes of the board:

"Whereas, at the December, 1915, meeting of the board of supervisors of Lamar county, the board authorized the clerk to issue three warrants in the sum of six thousand one hundred ninety-one dollars, and fifteen cents in payment of one White tractor engine and freight; and whereas, this board passed an order at this meeting, which order is of record in Minute Book 3 at page 182, directing the treasurer of said county to refuse to pay the said warrants, for reasons as set out therein; and whereas, the said White Company, through its salesman, M. C. Munson, has made known to this board by verbal statement that the said White Company expected to make formal demand on said treasurer for payment of said warrants, and that on refusal to do so that the said White Company would institute proceedings in law to force and compel the payment of said warrant, and it being the intention of this board, for and in behalf of said county of Lamar, to defend any action in court that may or might be instituted against said treasurer: It is hereby ordered

that Tally & Mayson be employed to represent and defend the said treasurer against any action filed against him to compel the payment of said warrant, and it is further ordered that the sum of five hundred dollars be appropriated out of the general county funds of said county for the purpose of paying said Tally & Mayson as a fee for services to be rendered, provided, however, that if any such action or suit is successfully terminated in favor of said treasurer, then the payment to be made; otherwise the county only agrees to pay accrued costs, etc.; and the board further agrees for and in behalf of the county to fully and completely protect the said treasurer against any costs or damages that might accrue against him for refusal to pay said warrant.

"Ordered this the 9th day of February, 1916, in open session.

"Voting aye: Carter, Weems, Stanford. Voting nay: J. D. Hatten, Geo. W. Byrd."

It appears that under this contract the cause referred to came on for hearing in the circuit court, and a judgment was rendered adverse to the treasurer of the county. From the judgment of the circuit court the district attorney and Tally & Mayson took an appeal to the supreme court. At the August meeting, 1916, the board entered an order on its minutes ratifying the action of the district attorney and his associates in appealing this case, and in this order ratifying it is recited that the board will pay the costs if the case is affirmed by the supreme court. An order was entered at the September, 1916, meeting of the board compromising this suit in which it is recited that the suit in the circuit court terminated adversely to the defendants Cook, treasurer, and McNair, clerk. The order recites the agreement of compromise, and it recites that Tally & Mayson appeared and objected to the dismissal of the appeal. The board of supervisors disallowed the claim of Tally & Mayson for services under the above con-

tract, and the case was appealed to the circuit court, and judgment was rendered in the circuit court against the county and in favor of Tally & Mayson for the sum of five hundred dollars. We are of the opinion that Tally & Mayson cannot recover from the county upon the contract sued upon because it was expressly stipulated in the contract that the payment was only to be made in case the suit against the treasurer terminated favorably to the treasurer. The county must act by order entered on its minutes in reference to its contract, and where a contract is made, it can only be varied by an order entered upon the minutes of the board. See *Bridges* v. *Clay County,* 58 Miss. 817; *Groton Bridge & Mfg. Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711; *Leflore County* v. *Cannon,* 81 Miss. 334, 33 So. 81; 7 R. C. L. 950, section 26; 11 Cyc. 468, par. 2; *Marion County* v. *Woulard,* 77 Miss. 343, 27 So. 619; *Dismukes* v. *Noxubee County,* 58 Miss. 612, 38 Am. Rep. 339. In *Groton Bridge & Mfg. Co.* v. *Warren County,* 80 Miss. 214, at page 218, 31 So. 711, at page 712, the court said:

"The petition in this case does not aver a contract of any kind with the county court, but the plaintiff seeks to recover upon a *quantum meruit.* In our opinion the county is not liable upon an implied promise."

Again on the same page it is said:

"It is plain from this that a county cannot, as to the subject-matter covered by section 344, be bound by an implied contract. The very purpose of this statute was to cut off entirely any possibility of fraudulent claims for extra work done," etc.

The record in this case does not contain the pleadings, evidence, etc., involved in the suit in which it is alleged that Tally & Mayson rendered services of the value of five hundred dollars. We are unable to tell from this record as to whether there was any merit in the appeal or not. The substance of the issues in that suit is not set forth in the bill of exceptions, and we

are bound to presume that the judgment of the circuit court was correct. The parties made a contract, the terms of which provided that the board would not be liable for the attorneys' fee unless the judgment was favorable to the treasurer. The judgment was adverse to the treasurer, and the county was under no obligation to appeal. The county complied with its contract. The plaintiff failed to impress or establish liability on the county because they failed to comply with a condition precedent imposed by the contract, and they cannot, therefore, recover on the contract. It is clear that they cannot recover on the *quantum meruit* theory against the county, because the county can only be bound by contracts made in the manner required by statute.

The board of supervisors had the right to control the litigation and dismiss the appeal, and it was its duty to do so, if it was convinced such appeal would result adversely to the county. The board, being trustees of the public, cannot divest itself of this power and duty by contract.

Judgment of the court below is reversed, and judgment entered here for the county.

*Reversed, and judgment here.*

STEVENS and HOLDEN, JJ., dissenting.