SMITH COUNTY *v.* MANGUM.

[89 South. 913. No. 22088.]

1. COUNTIES. *Entry of order on minutes of board of supervisors neces-
sary to validity of contract for bridge construction.*
Where a board of supervisors, proceeding under section 361, Code of
1906 (section 3734, Hemingway's Code) through one of its members,
awards the contract for the building of a bridge, and fails to enter
an order upon its minutes to this effect, there is no express contract
entered into for this work, and the county is not liable therefor.

2. COUNTIES. *Order on minutes necessary for contract for public works.*
Under this section the only way a board of supervisors can make a
contract for public works is by an order spread upon its minutes,
and in the absence of an order there is no express contract.

3. COUNTIES. *County cannot be bound by implied contract under stat-
ute.*
Under this section of the Code only an express contract is contemplated,
and the county cannot, as to the subject-matter covered by it, be
bound by an implied contract.

APPEAL from circuit court of Smith county.

HON. W. H. HUGHES, Judge.

Action by J. J. Mangum against Smith County. Judg-
ment for plaintiff, and defendant appeals. Reversed and
rendered.

*Nobles & Lane,* for appellant.

On the trial of this cause appellee insisted that he was
entitled to recover against the county on either of two
grounds: First, that he had a contract with the county for
the building of the bridge in question, and second, that if it
be held that he had no contract with the county for the
building of the bridge, then he was entitled to recover upon
a *quantum meruit,* because the bridge was necessary and
was worth the amount asked and was being used by the
public. It was held by the trial judge that appellee had no

contract with the county for the building of the bridges, and so could not recover on the first proposition. However, the court held that appellee could recover upon a *quantum meruit,* because the bridge was being used by the public. We shall discuss these two propositions in the order stated above.

We contend that the appellee did not have a contract with Smith county for the building of the bridge in question. We desire to call the court's attention at this point to section 361, Code of 1906, section 3734, Hemingway's Code, which provides how contracts shall be let. Also section 369, Code of 1906, section 3742 of Hemingway's Code. These sections are the authority of the board of supervisors for the making of contracts with respect to the building of bridges, etc. The board of supervisors are agents of the county, with special and limited powers. They have no authority or power to make a contract except such authority and power as are delegated to them by statute. Any attempted contract that does not fall within the limitation prescribed by law for the making of contracts by the board of supervisors, is invalid and void. By an unbroken line of authorities the court of this state has held that before a contract can be made with the county all the necessary prerequisite steps must be taken and the statutes with reference thereto complied with strictly. This point was fully and ably covered in the case of *Groton Bridge & Mfg. Co. v. Board of Supervisors, Warren County,* 80 Miss. 214, 31 So. 711. In that case the court quoted with approval the case of *Woolcott* v. *Lawrence County,* 26 Mo. 277.

In the case of *Lamar County* v. *Tally & Mayson,* 116 Miss. 588, 77 So. 299, the court held that a county could only be bound by a contract evidenced by an order entered upon its minutes. Again in the case of *Gilchrist-Fordney Company* v. *Keyes,* reported in 11 Miss. 742, 74 So. 619, where members of the board of supervisors executed a deed to certain 16th section timber, and the deed was held by this court to be a nullity, because there was no precedent

order entered upon the minutes of the board authorizing the sale.

This holding was very forcibly stated in the case of *Bridges & Hill* v. *Board of Supervisors,* 58 Miss. 817. *Crump* v. *Colfax County,* 52 Miss. 107; *Benton County* v. *Patrick,* 54 Miss. 240; *Dixon* v. *Green County,* 76 Miss. 794, 25 So. 665; *Marion County* v. *Foxworth,* 83 Miss. 677, 36 So. 36; *Leflore County* v. *Cannon,* 81 Miss 334, 33 So. 81; *Marion County* v. *Woulard,* 27 So. 619; *Northern Drainage Dist.* v. *Bolivar County,* 71 So. 380.

We submit that appellee is not entitled to recover on a *quantum meruit.* As above stated the legislative scheme provides for clear and distinct contracts with a county with respect to all of its public buildings, etc. In carrying out this scheme, the statute provides for the keeping of minutes for the entries of all orders of the board; for the allowances of all accounts, and in authorizing the payment of any claim that the section and page of the statute must be stated in the order. The purpose of this statute is manifest, it being to prevent the payment of any money that has not been authorized by law, or some contract made in compliance with some particular provision of the statute. This, of course, cannot be done in the absence of a definite and clear contract with the board in any case where the payment for any public work is the subject-matter. The supreme court of our state has held that this principle is not applicable to a recovery against a county. *Groton Bridge & Mfg. Co.* v. *Board of Supervisors, Warren County,* 80 Miss. 214, 31 So. 711, *supra.*

Appellee contends that because the public used the bridge in the county upon its completion that this constitutes an acceptance by the county. We do not so think. The bridge built without a contract was the property of the appellee and it took no affirmative act on the part of appellant to not accept it. The public's use of the bridge was not at the instance of appellant and could not by any sort of reasoning be construed as an acceptance of the

bridge by the county. If the contention of appellee be correct, then the whole scheme of bridge building which our courts have held must be strictly complied with could be eliminated in the building of county bridges. John Doe could find a bridge that needed to be replaced with a new one, proceed to build the bridge, which of course the public would use when completed, and recover the price thereof from the county. He would only be required to show that the bridge was necessary and that the sum demanded was reasonable and that the public was using the bridge. This of course, cannot be the law. It is in conflict with the unbroken line of decisions of this and other states with respect to the making of public contracts by the county and the expenditure of the county's money. Such a holding would set aside every safeguard that has been . thrown around the law of contracts and the expenditure of public money by the county for the last half a century, and would subject the building of public buildings and the expenditure of public moneys by the county to every kind of fraudulent and dishonest motives. It would open wide the way for the schemers and conspirators to be awarded public contracts by dishonest and unfaithful public servants.

We do not believe that the appellant in this case should be required to pay for a bridge which they did not only fail to contract for and refuse to award, but which they specifically and clearly objected to building and rejected the bid of appellee therefor.

We submit that this case ought to be reversed and judgment entered here for appellant.

*R. C. Russell,* for appellee.

This record presents two questions for this court for consideration, viz: First, did appellee have such a contract with the board for the building of the bridge as to bind the county? Secondly, if appellee had no valid contract, then was the course of dealing between the board and himself

such as to bind the county on the doctrine of *quantum meruit?*

On the first of these two propositions appellant contends that he did have a valid contract with the county for the construction of the bridge, that there are sufficient orders and other written evidences of the contract appearing upon the minutes of the board and filed with its clerk to establish a contract when the same has been fully executed according to its terms and provision and accepted by the contracting party.

Appellant contends that appellee has no contract with the county, and that the county is not legally liable to the appellee in question; because appellant says that there is not a contract appearing upon the minutes of the board nor any order awarding appellee the contract. They therefore base their whole defense to this suit on the sole proposition that the board failed at its December meeting or at any other time to spread an order upon the minutes of the board awarding appellee the contract and in support of their contention on this point they cite section 361 of the Code of 1906, and numerous decisions of our own state holding that all contracts with the county must appear upon the minutes of the board, etc., but it is our view that this record discloses the fact that each and all of the decisions collated and cited by appellant were dealing with and based upon an entirely different statement of facts to those of this case. We take it that from an examination of the case cited by appellant that there was nothing appearing upon the minutes of the board indicating any purpose at all on the part of the board to make or enter into a contract, but that is not true in the instant case as the minutes of the board show that each of the ten prerequisites that we have above enumerated were complied with by the board.

There is not an intimation in section 361 of the Code of 1906, requiring the board to spread an order upon its minutes awarding a contract, after the board has done all the the other things necessary to be done in awarding the con-

tract.   But it is necessary that such order be spread upon
the minutes of the board, what is to prevent the court from
requiring the board after awarding this contract as shown
by this record and failing to reject the bid at the time al-
lowed them by law and receiving and filing the bond from
now entering such order, as provided by section 1016 of
Code 1906.

This court held in the case of *Ross & Yerger* v. *Simpson
County,* 51 So. 597: "That the county was liable to a con-
tractor for premiums on insurance taken out on the un-
finished building by the contractor," etc.

The insurance policies in this case were not made pay-
able to the county but were payable to the contractor, and
the courthouse had not been completed nor accepted by the
county and there was no contract directly nor indirectly
between Ross & Yerger and Simpson county for the insur-
ance policy, it was a contract pure and simple between an
insurance agency and a contractor who was constructing
a courthouse for the county, and yet the court held that
the county was liable for the premium on the policy be-
cause the contractor had been instructed to do all things
necessary to complete the building.   So we insist that the
contract between appellee and Smith county contain and
embrace more prerequisites than the contract of Ross
& Yerger, and if Ross & Yerger were entitled to recover the
premiums on their insurance policy, when they had no con-
tractorial relations whatever with the county, then cer-
tainly appellee, who was awarded a contract as the lowest
competitive bidder at public outcry and lived up to the
terms and provisions of the contract, is certainly entitled
to recover in the instant case.   The second proposition
raised by this record is whether or not appellee, from the
course of dealing had between himself and the county, is
entitled to recover against the county on an implied con-
tract, upon the principal of *quantum valebat* and we in-
sist that from the record appellee is entitled to recover on
both a contract actually entered into by the board and also
upon the principle of *quantum valebat.*

The appellant has not interposed but one defense to this action, and that is the failure of the board to spread an order upon its minutes awarding the contract to appellee, the question of fraud, failure of consideration, breach of contract, etc., are not raised as matters of defense to this suit, and if they are not then why shouldn't the principle of *quantum valebat* be invoked against the county to the same extent that it could against any other individual or organization?

This contract was awarded appellee in the usual and customary way for contracts of this character to be made with the county, each and every prerequisite necessary or required by law were observed and complied with by the board in awarding this contract save one, the spreading of an order upon its minutes after the contract had been publicly awarded as provided by law. The contract was therefore properly and legally entered into between the county and appellee, and after it was thus entered into it then became the duty of the board to enter an order upon its minutes, if it was necessary to enter such order, by awarding the contract to appellee. The order should have been entered if under the law it was required to be entered at all, at the meeting at which the contract was awarded, and the failure of the board to comply with the duty required of it by law should not operate to the prejudice of appellee and for the county to escape liability in this case would be to punish appellee for the board's negligence in failing to do the things required of them by law, that is to say failing either to approve or reject the bid at the time required by law.

Appellee was not given his right to construct the bridge in question by any one individual member of the board and was not attempting to act in the construction of the bridge upon the action of the board in vacation or of any of its individual members, but he built the bridge after he was awarded the contract as the lowest competitive bidder and filed with the board a good and solvent bond, and that has ever been required by the legislature or any court of a suc-

cessful bidder, and if he is to be robbed of the fruits of his own labor, it is to be done by the negligence of the county and not for fault of his and no decision or law cited by appellant's council in our judgment has ever passed upon a state of facts identical with the one in the instant case except, perchance it be the case of *Crump* v. *Board of Supervisors of Colfax County,* 52 Miss. 107, in which the court held, that a verbal contract by the board, or authority given verbally to the sheriff, to rent offices for the accommodation of county officials, will not bind the county upon an expressed contract; but if the county by the verbal action or contract use the property of another, it will be bound as by an implied contract, upon the principle of *quantum valebat."*

Appellee contends that he has a much stronger case for the invoking of the doctrine of *quantum meruit* than the Colfax county case, as there was no attempted order whatever, no blue print, plans and specifications, order or notice in the Colfax county case. *S. Golett, Inc.,* v. *Andrew Gray Co.,* 88 So. 175.

*Hilton & Hilton,* for appellee.

The appellee's contention is that every prerequisite to a valid contract was entered into and the failure of the clerk to enter on the minutes of the board that the contract was awarded the appellee and although the board may have been irregular yet the bond bound the appellee and sureties as shown by Sec. 742, Hemingway's Code.

Nothing is better settled in our state than the proposition that when a jury or a court acting as a jury, has settled what are the facts of conflicting testimony, that the supreme court in its consideration of the case adopts the facts determined by the jury or the court as the facts of the case before it for determination.

There are two issues that confront us in this case: First, appellant contends there can be and is no contract because no minute record was made. Appellee contends if his bid

was accepted and his bond approved, it is not necessary for the record to show by its minutes that the bridge was let where the contract was made by letting the bridge out and the bidder making his bond and complying with the contract by erecting a bridge according to its terms we cite the following cases: *Halstead* v. *Lake County Commissioners,* 56 Ind. 363; *Clapp* v. *Cedar County,* 5 Iowa, 15; Am. Dec. 678; *Long* v. *Boone County,* 36 Iowa, 60; *Clark* v. *Polk County,* 19 Iowa, 248; *Jordan* v. *Osceola County,* 59 Iowa, 388; 13 N. W. 344; *Bathurst* v. *Course,* 3 La. Ann. 200; *Ragoss* v. *Cuming County,* 36 Neb. 375, 54 N. W. 683; *Brooks* v. *Claiborne,* 67 Tenn. 43.

By these authorities it appears that the failure of the clerk to enter on his minutes the letting of a contract does not and cannot invalidate a contract which the board of supervisors entered into.

If the failure of the clerk to enter this order on the minutes did not invalidate the contract as the authorities, *supra,* hold, then it must have been a valid contract and we call the court's attention to the proposition that while the board of supervisors can ordinarily rescind an order during the session at which it was made, but the exception to this is, it has made contractional in its nature, at any time. Quote from Cyc, page 486: *Tippecanoe* v. *Everett,* 51 Ind. 543; *Cook* v. *Hamilton Commissioners,* 6 Federal case No. 3156, 6th McLain 612; *Douglass* v. *Myrick* (Tex. Civil Appeal), 159 S. W. 422.

But there is another proposition in the case which has been argued by our associate counsel and which we revert to only to cite additional authority. That, is if the county, through the various acts which it did through the board, induced appellee to build a bridge, procured the completion of the bridge, accepted and used it, they are liable on an implied contract upon the principle of *quantum valebat.* In addition to authorities of our own state, cited in brief of associated counsel, we cite the following: *Kinsey* v. *Little River County,* Fed. Cas. No. 7, 829.

"Money borrowed by a county without authority but used for its benefits, may be recovered by any action for money and had and received." *Peed* v. *McCrary,* 94 Ga. 487, 21 S. E. 232.

"Though a county has no power to borrow money by temporary loan to supply deficiencies to revenues where the money of a lender has actually been applied to objects to which county revenue may rightly be devoted, the county may repay the loan out of the county treasury." *Duncan* v. *Niles,* 32 Ill. 532, Am. Dec. 293.

"Where a county received money borrowed by an unauthorized agent, who gave a note therefor, while the county is not liable on the note, it is liable *in assumpsit* if in fact it received the money." *Jackson County* v. *Hall,* 53 Ill. 440.

"A party building a county jail agreed to receive in payment the bonds of the county, and did receive them, but they were repudiated by the county authorities as invalid. *Held,* that recovery for the price agreed to be paid could be had under the common counts if plaintiff should return the bonds to the county or bring them into court to be cancelled." *Bass Foundary & Machine Works* v. *Park County Comm'rs,* 141 Ind. 68, 32 N. E. 1125.

"When a county building is abandoned by the contractor in the course of its erection, and the county board take charge of the construction, persons who furnish material or labor for them may recover on an implied contract, if such course by the board is *ultra vires.*" *Butler* v. *Neosho County Comm'rs,* 15 Kan. 178.

"Where the admitted facts were that the county treasurer occupied for his office a room belonging to plaintiff, that the defendant made no other provision for such office than by suffering him to occupy the room, that the plaintiff gave notice pending the occupation to at least two of the members of the county board that he should expect and demand compensations for its use and that such occupation was with the knowledge and consent of the defendant.

*Held,* That the defendant was liable for the value for the use of the room, although there was no express contract between the plaintiff and the defendant that he should receive compensation therefor." *Crump* v. *Colfax County Sup'rs,* 52 Miss. 107.

"Although a verbal contract of authority given by the board to the sheriff to rent offices for the county officials will not bind the county upon an express contract, yet the county may be liable for the value on the principle of *quantum valebat* upon a use of the property pursuant to such oral contract or authority." *Copp* v. *St. Louis County,* 34 Mo. 383.

"When a county court appoints an agent to do things that are authorized by law to be done, there is an implied contract that the county will pay for the services if valuable." *Waits* v. *Ornsby County,* 1 Nev. 370.

"An action for money had and received is maintainable against a county to recover money loaned to the county commissioner and expended for the benefits of the county, although the contract of loan was invalid from want of authority on the part of the commissioners."

We submit to the court that the able counsel for appellant have ingeniously presented their case by arguing and stating to the court the facts to be as is testified to by the witnesses for appellant. But being mindful that the facts in this case have been established on controverted evidence by the court below, these facts so established will be the facts on which the law will be based in this case here, and therefore the evidence of appellant does not enter into consideration of the case but the question solely is, did the court below correctly apply the law to the facts which he accepted as being the true facts in the case?

We therefore submit that accepting the evidence of the appellee and his witnesses as being the facts that the authorities by associate counsel and ourselves in this brief warranted the court below as a matter of law in rendering the judgment it rendered in this case.

SYKES, J., delivered the opinion of the court.

The appellee, J. J. Mangum, as plaintiff in the circuit court, filed suit against Smith county for the sum of four thousand, seven hundred and seventy dollars. In his declaration he alleges that the board of supervisors of Smith county legally adopted certain plans and specifications for the building of a bridge across Ocohay creek on a public road in the county. That the board made publication as required by law for the letting of the contract and at the proper time the appellee became the lowest and best bidder and was awarded the contract for the building of the bridge. That his bond was properly approved by the board. That in compliance with this contract he constructed the bridge, but that the board has declined and refused to pay him for this work. The county pleaded the general issue, and filed several special pleas, which it is unnecessary to set out in detail. By agreement the case was tried by the judge and judgment in favor of the appellee Mangum was entered for the sum of four thousand, five hundred, seventy-one dollars and fifty cents, from which judgment this appeal is prosecuted.

The order of the board of supervisors authorizing the advertisement for the awarding of this contract provided, among other things, that it reserved the right to reject any and all bids. Assuming, as we must, for the purpose of a decision in this case, that all controverted questions of fact were resolved in favor of the appellee, it appears from these facts that the board complied with all the statutory requirements pertaining to the awarding of contracts of this character to the time the contract was actually let at public outcry when the appellee became the best bidder. The contract was let at public outcry at the front door of the courthouse by one of the members of the board of supervisors. Immediately thereafter the appellee appeared before the board of supervisors and inquired how long they would be in session, and if they would permit him to return to his home in another

county for the purpose of making his bond. He was orally
told by them that they would remain in session for several
days, and they would receive his bond at a later date. That
a few days thereafter, while the board was still in session,
he presented them with a bond, and it was then discovered
by some member of the board that the sureties had not ac-
knowledged it before an officer, and he was then orally re-
quested by the board to have the bond properly acknowl-
edged and return it to the clerk of the board by mail. That
he complied with this request, and the bond was received
and kept by the clerk of the board. That there was no ob-
jection to the bond, and there was no formal approval of it
by the board of supervisors, further than the possession
and holding of it by the clerk of the board. There was no
formal written order spread upon the minutes of the board
of supervisors awarding to appellee the contract to build
the bridge. The appellee became the best bidder at the
December meeting of the board. No order of the board of
supervisors was spread upon the minutes at that meeting,
either accepting or rejecting this bid. In the meantime
the appellee began the building of the bridge, and this work
had progressed to a very great extent when at the January
meeting of the board of supervisors an order was spread
upon the minutes, rejecting appellee's bid. One of the
members of the board of supervisors, the latter part of
January, notified the agent of the appellee that his bid had
been rejected. That this agent thereupon took the matter
up with three members of the board of supervisors, and was
assured by them that it would be all right for him to pro-
ceed with the erection of the bridge. The testimony fur-
ther shows that the appellee was furnished by the board
of supervisors with the plans and specifications and blue-
prints of the bridge. That the bridge is across one of the
most important highways of the county. That after the
completion of the bridge it was inspected by the members
of the board of supervisors and found to comply in all
respects with the plans and specifications. That since its
completion with the full knowledge and consent of the

board of supervisors the bridge has been used by the citizens of the county.

The contentions of the appellee as expressed in his brief, are these:

First, Did appellee have such a contract with the board for the building of the bridge as to bind the county?

Second. If appellee had no valid contract, then was the course of dealing between the board and himself such as to bind the county on the doctrine of *quantum meruit?*

Section 361, Code of 1906 (section 3734, Hemingway's Code), provides how contracts of this character shall be made by the board. It has been repeatedly held by this court that the board of supervisors can only act and speak through its minutes; that is through orders entered upon its minutes. While a member of the board of supervisors at public outcry acknowledged the appellee as the lowest, best, and acceptable bidder, yet this action is not binding upon the board of supervisors unless an order spread upon its minutes awarding the contract to the appellee is actually made. This rule has been variously stated by this court.

In the case of *Crump* v. *Board of Supervisors of Colfax County,* 52 Miss. 107, it is stated that:

"It would seem to be manifest, therefore, that whatever action is taken on any subject whatever must be evidenced by an entry on its records.

"It can only enter into an express contract by its assent thereto, in some form or other, entered on its minutes."

Again in the case of *Board of Supervisors of Benton County* v. *Patrick et al.,* 54 Miss. 240, the court upon this question cites with approval the *Crump Case, supra,* and adds the following:

"If the contractors or the commissioner thought the alterations necessary, authority to make them ought to have been obtained from the board, and its consent manifested by its record."

In the case of *Bridges & Hill* v. *Board of Supervisors of Clay County,* 58 Miss. 817, speaking of a similar contract, it is there held that:

"Boards of supervisors bind counties only when acting within the range of their authority, and in the mode and manner pointed out by the statutes. Their contracts are evidenced by the entries on their minutes, and can no more be varied by proof that the members failed to speak, though they knew that those with whom they were dealing misunderstood the purport of what they were doing, than they can be created and established by silence alone. It takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county by a contract; and when thus made, the contract is not to be varied, any more than created, by the mere silence of a portion of the board and the mistaken assertions of others."

In the case of *Dixon* v. *Greene County,* 76 Miss. 794, 25 So. 665, the court says that: "The only express contract made by the board was to be found in the order on its minutes, and the plans and specifications made part thereof by reference."

In discussing the same question the court in the case of *Groton Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711, says that—The board of supervisors may "by a new contract, or an amendment of its original contract, or by a ratification (all of which must be by acts of the board in open session, spread upon its minutes), bind the county to pay in each of the cases named. And parties contracting with the counties are charged with the knowledge of this statute. . . ."

This doctrine is reiterated in the case of *Marion County* v. *Foxworth,* 83 Miss. 677, 36 So. 36, in the following language:

"Such contracts, like all other contracts made by boards of supervisors, must be evidenced by orders duly entered on their minutes, or by papers in such orders referred to and made a part thereof."

To the same effect are *Gilchrist-Fordney Co.* v. *Keyes,* 113 Miss. 742, 74 So. 619, and *Lamar County* v. *Tally & Mayson,* 116 Miss. 588, 77 So. 299.

Under these authorities it is manifest that the board of supervisors of a county can only enter into an express contract by an order spread upon its minutes, and that there can be no such thing as a verbal or oral order of this board. It, therefore, follows that the appellee had no express contract with the county for the building of the bridge.

The two sections of the Code relating to contracts of this character are sections 361 and 369, Code of 1906, (sections 3734 and 3742, Hemingway's Code). The first provides how contracts for public work are made; the second, that contracts of this kind shall not be made in vacation, except in certain cases therein stated. This latter section was section 344, Code of 1892. In the case of *Groton Co. v. Warren County, supra,* the appellant was attempting to hold the county liable on a *quantum meruit* basis. In their holding that there could be no such recovery it is stated in the opinion that such liability on an implied contract will not attach where an express contract only is contemplated by statute, citing authorities. Again it is said that:

"It is plain from this that a county cannot, as to the subject-matter covered by section 344, be bound by an implied contract. The very purpose of this statute was to cut off entirely any fraudulent claims for extra work done and materials furnished, and it limits the board of supervisors to express contracts in respect to the subject-matters embraced in the statute, made in the mode pointed out."

This reason with equal force applies to contracts made under section 369, Code of 1906 (section 3742, Hemingway's Code). Under both of these sections only express contracts are contemplated, and therefore no recovery can be had under claim of an implied contract.

It, therefore, follows that the appellee cannot recover on a *quantum meruit* basis. The circuit court should have entered judgment in favor of the appellant.

Reversed, and judgment will be entered here in favor of appellant.

*Reversed.*