# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00693-SCT

*GREENE COUNTY, MISSISSIPPI, JOHN MARSHALL EUBANKS, TOMMY ROBERTS AND MARION PIERCE*

*v.*

*CORPORATE MANAGEMENT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2007 |
| TRIAL JUDGE: | HON. T. KENNETH GRIFFIS, JR. |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY L. MILLS |
| | EDWIN LLOYD PITTMAN |
| ATTORNEY FOR APPELLEE: | DARREN E. GRAY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 05/28/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2008-CA-00122-SCT

*CORPORATE MANAGEMENT, INC.*

*v.*

*GREENE COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2007 |
| TRIAL JUDGE: | T. KENNETH GRIFFIS, JR. |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER GARRETT HENDERSON |
| | HEBER S. SIMMONS, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 05/28/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     In this breach-of-contract case, the trial court found that a county, through its board

of supervisors, improperly terminated its agreement to allow a private company to manage

a county hospital.  The county now appeals, raising several issues, including that it was not

bound by the contract.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     Counties in Mississippi are authorized to build and operate community hospitals.

Specifically, counties may

> acquire and hold real estate for a community hospital . . . and may . . .
> construct a community hospital thereon and/or appropriate funds according to
> the provisions of this chapter for the construction, remodeling, maintaining,
> equipping, furnishing and expansion of such facilities by the board of trustees
> upon such real estate.

Miss. Code Ann. § 41-13-15 (Rev. 2005).  Pursuant to the statute's authority, the Greene

County Board of Supervisors ("Supervisors") purchased land on which it constructed a

community hospital and operated a nursing home.  In conjunction therewith, the Supervisors

created the Greene Rural Health Center ("GRHC") and empowered its Board of Trustees

("Trustees") to govern and operate the hospital and nursing home, pursuant to the powers

enumerated in the statute.  In 1991, the hospital closed, but the Supervisors continued to use

a portion of the building and grounds to operate the nursing home.

¶3.     On June 24, 2004, the Supervisors published a Notice of Public Hearing, which

provided that "a public hearing will be held on the possibility of the lease, lease with option

to purchase, or sale of the Greene Rural Health Center . . . ," and on August 12, the Supervisors held the public hearing on the matter during their regular meeting.

¶4.     On August 23, 2004, the Supervisors requested "proposals for the purchase or lease of Greene County Rural Health Center by health care organizations experienced in the operation of general acute care hospitals and nursing homes." On October 4, 2004, Corporate Management, Inc. ("CMI") responded to the request by submitting a proposal.

¶5.     At their October 6, 2004, meeting – noting receipt of CMI's proposal – the Supervisors unanimously agreed to "take the matter of [GRHC] under advisement." They further authorized their attorney to "get any necessary information from [the administrator of GRHC] that may be needed to move the negotiations process between [Greene] County and [CMI] along more quickly."

¶6.     On October 28, 2004, the Supervisors employed an attorney to "evaluate the options of the Nursing Home/Hospital sale or lease." The attorney advised the Supervisors that they could either proceed in negotiations with CMI (the only company that had submitted a proposal), or reject CMI's proposal and begin a new RFP process.

¶7.     On November 23, 2004, after a presentation by CMI, the Supervisors unanimously agreed that they "want[ed] an emergency room within a three-month period and a critical care hospital within one year['s] time and so long as it [did not] cost [the] County anything." The Supervisors agreed that their attorneys should research the matter in depth and report back.

¶8.     On December 9, 2004, the Supervisors unanimously agreed to "recommend [the Trustees] to move forward for a period of at least [a] one year contract with a consultant to

3

assist in aiming UPL monies toward building an emergency room/hospital." At a March 30, 2005, meeting (which was attended by several of the Supervisors), the Trustees voted to hire CMI to take over consulting, effective April 1, 2005; and, on April 1, 2005, Ted Cain (on behalf of CMI), Tommy Roberts (ostensibly on behalf of the Trustees),[1] and Morris Hill (ostensibly on behalf of the Supervisors),[2] executed a contract (the "Nursing Home Contract"). The stated purpose of the Nursing Home Contract was for "CMI to provide designated management services in relation to Owner [Supervisors] and Agent's [Trustees'] operation of Facility [nursing home]." The Nursing Home Contract included a provision which automatically renewed the contract for successive one-year terms, unless the contract was terminated.

¶9.     On June 28, 2005, the Trustees met to discuss a possible agreement with CMI to reopen the community hospital, which previously had been designated a Critical Access Hospital ("CAH").[3] When a few of the Supervisors who attended the Trustees' meeting suggested the decision should be delayed for more consideration, CMI explained that the contract needed quick approval because the CAH designation was due to expire at the end of the year.

---

[1]The Trustees did not actually purport to be a party to the contract but, rather, an agent for the Board of Supervisors.

[2]Although both the Trustees and Hill purportedly signed on behalf of the Supervisors, the contract was neither voted on by, nor entered on the minutes of, the Supervisors.

[3]"Critical Access Hospital" is a federal designation which allows a hospital to participate in certain federal programs, such as Medicare.

4

¶10. On June 29, 2005, the Trustees presented the Supervisors with a proposed contract, and the Supervisors voted that the contract be accepted, after certain corrections were made. The Supervisors also voted to "allow the Nursing Home to borrow money for the new construction of a hospital for Greene County."

¶11. On June 30, 2005, the Trustees met, with some of the Supervisors present. CMI presented a contract which reflected the changes requested by the Supervisors. The Contract (the "Hospital Agreement"), dated June 30, 2005, was executed by Ted Cain on behalf of CMI, Tommy Roberts on behalf of the Trustees (as agent for the Board of Supervisors), and Morris Hill (ostensibly on behalf of the Supervisors). The purpose of the Agreement was for "CMI to provide designated management services in relation to Owner [Supervisors] and Agent's [Trustees'] operation of their critical access hospital." The Hospital Agreement included a provision which automatically renewed the agreement for successive one-year periods, unless terminated. The Hospital Agreement was neither voted on by the Supervisors, nor entered on its minutes.

¶12. At an October 17, 2005, Trustees' meeting, one of the Trustees moved to cancel CMI's contract.[4] Another trustee seconded the motion, stating it needed no discussion, and should be called for a vote. At that point, the Trustees' attorney asked the Trustees to consider the matter before calling for a vote, due to the "repercussions that will certainly arise from [breaching] the contract." When the attorney's advice was ignored, he

---

[4]The minutes of the meeting do not disclose the reason for the motion to cancel CMI's contract. In fact, the minutes reflect someone asking the trustee who made the motion "where his motion was coming from."

immediately resigned as the Trustees' legal counsel. The motion was called for a vote, and passed.

¶13. On October 31, 2005, the Trustees met again, and one of the trustees moved to "reinstate CMI and to give them the authority to do what they needed to get the hospital open, and to obtain the CAH designation by the deadline of 12-31-05." The motion to reinstate was passed by a vote of three to two.

¶14. On November 1, 2005, Trustee Larry Brown reported to his office, where he worked for Supervisor Marion Pierce.[5] Pierce demanded that Brown resign from the Board of Trustees and told him that he had someone to take Brown's place. Pierce took Brown to the chancery clerk's office where Brown signed and submitted his written resignation. Later that day, however, Brown attempted to rescind his resignation. Brown testified at trial that he believed he was illegally removed from his position, and that he was still a member of the Trustees. Brown attended the next Trustees meeting, but was not allowed to participate. Although it is not entirely clear from the record, at some point the Supervisors apparently "appointed" I.D. Brown to replace Larry Brown as GRHC Trustee.[6]

¶15. On the same day that Brown submitted his resignation, CMI filed a complaint[7] seeking a permanent injunction, preliminary injunction, and temporary restraining order, all for the

_____

[5]Brown had voted to reinstate CMI's contract at the October 31 Trustee meeting.

[6]The issue was addressed in the special chancellor's final ruling, and it is argued in both parties' briefs. Also, it is noted in the Trustees minutes from November 28, 2005, that I.D. Brown was present and that he was the "trustee appointed by [the Supervisors] to replace Larry Brown."

[7]CMI named GRHC, Greene County, Town of Leakesville, Tommy Roberts, Larry Brown, Marshall Eubanks, James Meadows, Marion Pierce, Rebecca Rylee, Safeco Surety, and RLI Surety as defendants.

purpose of setting aside the Resolution and Order of [T]ermination of October 17, 2005, affirming the Order of October 31, 2005, and "restraining [GRHC] from suspending or terminating the Management Contracts[8] with CMI." CMI's complaint also asked the court to direct the Trustees to follow the law and abide by the management contracts, and to enjoin GRHC from interfering with or obstructing CMI from complying with its obligations under the management contracts, and for money damages and attorney's fees.

¶16. On March 20, 2006, a chancellor (who had been specially appointed to hear the case) held a hearing on CMI's motion for a temporary restraining order. The parties signed an agreed order holding the motion in abeyance until a March 29 hearing on CMI's motion for preliminary injunction, and Greene County and GRHC agreed to refrain from taking any action to terminate, suspend, or interfere with the Nursing Home and Hospital Agreements in the meantime.

¶17. At the hearing on March 29, 2006, which concluded on March 30, the chancellor held that the contracts were not void, but were ambiguous as to when they were to terminate. He further held that Greene County and GRHC were enjoined from terminating or suspending the contracts. The chancellor further stated that his rulings were temporary, and would be in force until a final hearing on the merits.

¶18. On April 27, 2006, the chancellor entered his official order, which granted CMI's motion for preliminary injunction and stated that Greene County and GRHC were prohibited from suspending or terminating the Nursing Home or Hospital Agreements until further notice. The court also ordered Greene County and GRHC to continue to operate under the

---

[8]The "Management Contracts" referred to both the Nursing Home and Hospital contracts.

7

Agreements until further notice. Greene County and GRHC then filed a motion for, inter alia, modification of injunction which, on June 30, 2006, the court denied.

¶19. On July 19-20, 2006, the court held a final hearing on the merits and, on December 18, 2006, the Special Chancellor issued his final ruling in a memorandum opinion. He ruled that Greene County and GRHC had breached the contracts, and were permanently enjoined from suspending or terminating the Nursing Home or Hospital Agreements prior to December 31, 2007, and that the parties were to continue to operate under the terms of the Agreements.

¶20. As a result of various post-trial motions by both parties, the final judgment was amended twice (though not substantially). On April 20, 2007, the special chancellor entered the second amended judgment, which stated that the Agreements were valid and enforceable contracts.

¶21. The judgment also stated that, although the Hospital Agreement obligated Greene County and GRHC to *offer* the hospital and nursing home for sale or long-term lease on or before October 30, 2007, the decision to *actually* sell or lease rested solely within Greene County's discretion, and if Greene County and GRHC chose not to complete a sale or long-term lease before December 31, 2007, they would be required to enter into a management contract with CMI for both facilities, effective for at least five years.

¶22. Finally, the chancellor ordered GRHC to remove I.D. Brown[9] as Trustee and reinstate Larry Brown immediately. Greene County timely filed its appeal of the chancellor's orders.

---

[9] I.D. Brown was not a party to the proceedings.

¶23. Thereafter, at a specially-called meeting on September 24, 2007, the Trustees voted unanimously to enter into a new management contract with CMI. On October 15, 2007, the Trustees and CMI signed a "lease contract and agreement." Believing that this new contract interfered with the court's December 31, 2007, deadline concerning the possible sale or lease of the hospital, Greene County filed a Motion for Contempt and Other Relief.[10] After a hearing, the chancellor ruled that CMI and the Trustees were indeed in contempt of the final judgment, and ordered that they "cease and desist from entering into any further management contracts until and unless Greene County has failed to enter into a sale or long-term lease of the Hospital and Nursing Home on or before December 31, 2007." He also ruled that CMI's October 15, 2007, lease contract was "null, void and without effect." CMI appeals this ruling, and its appeal was consolidated with Greene County's appeal of the final judgment.

**ANALYSIS**

¶24. Greene County raises six issues on appeal:

(1)    Whether the management Agreements could be terminated by the Trustees prior to the expiration of the contractual terms;

(2)    Whether the Agreements were binding upon the Supervisors and, therefore, Greene County;

(3)    Whether, upon termination of the Agreements, the plain language of Section 41-13-35 prevents a finding that Greene County breached the implied covenant of fair dealing;

(4)    Whether the trail court erred in finding the termination of the Agreements breached the implied covenant of fair dealing;

---

[10]Greene County also argued that the Trustees and CMI had failed to submit a full accounting of the financial affairs of the Hospital and Nursing Home as required in the final order.

9

(5)     Whether the trial court erred in removing I.D. Brown from the Board of Trustees;

(6)     Whether the trial court erred in denying the full relief sought in the motion for a new trial, and particularly as it related to illegal taping, compliance with bid laws, and the hiring of Larry Brown.[11]

¶25.   CMI cross-appeals, raising two issues:

(1)     Whether the trial court erred in finding the contract did not grant CMI the exclusive right to receive an offer to purchase or lease the facilities; and

(2)     Whether the trial court erred in denying CMI lost profits due to the breach of contract.

¶26.   CMI also claims (in the second, consolidated appeal) that the trial court erred in finding it in contempt of the final judgment.

¶27.   We find Greene County's second issue to be dispositive of the merits of this case. We also find it appropriate to address two collateral issues – the removal of I.D. Brown from the Board of Trustees, and the chancellor's order holding the Trustees and CMI in contempt.

**I.**

¶28.   The chancellor – in reviewing the two Agreements together – found that the Trustees had authority granted by Mississippi Code Section 41-13-35(5)(g) to enter both Agreements without the approval of the Supervisors, and that all statutory requirements to form a contract were met. We find the chancellor's conclusions were erroneous for two reasons.

*Statutory authority to contract.*

¶29.   The Hospital agreement clearly states:

---

[11] The issues of illegal taping and noncompliance with bid laws were raised for the first time in Greene County's motion to alter or amend judgment, or in the alternative for a new trial, which the special chancellor denied.

10

Owner and Agent agree *to offer for sale or long term lease* both the Greene County Rural Health Center Skilled Nursing Facility and Hospital Facility to CMI, or an entity designated by CMI, on or before October 30, 2007. Owner and Agent agree to complete such sale or long term lease on or before December 31, 2007. If Owner and/or Agent and CMI cannot agree to sale or long term lease terms on both facilities addressed in this agreement, Owner and/or Agent hereby agree to enter into a management contract with CMI on or before December 31, 2007 for a period not less than five (5) years. If such long term management contract for both facilities is entered into, Owner and/or Agent agree that such long term management contact will be renewable at the sole discretion of CMI or a company designated by CMI, at the end of the initial five (5) year term and each and any successive term for successive five (5) year periods.

. . .

Owner and Agent further agree to grant CMI, or a company designated by CMI, *the first right of refusal to purchase both Greene County Rural Health Center Skilled Nursing Facility and Hospital Facility* should the Owner/Agent desire to sell, lease or discontinue management and/or operation of any one of the facilities at any time in the future prior to or after October 30, 2007. Owner/Agent and CMI further agree CMI shall have the option to extend the October 30, 2007 purchase date for a period of one (1) year and extend any management contract of which CMI and Greene County Rural Health Center Skilled Nursing Facility and Hospital Facility are parties to for successive one year increments until such time as CMI or an entity designated by CMI shall purchase the facilities or give written notice to Owner/Agent of the desire not to purchase the Skilled Nursing Facility and Hospital Facility.

(Emphasis added.)

We find this language clearly involves the sale or lease of the community hospital. Thus, the question becomes whether the Trustees had the statutory authority to enter into them without the Supervisors' approval.

¶30. In finding that the Trustees had such authority, the chancellor relied on Mississippi Code Section 41-13-35(5)(g), which states, in pertinent part, that the trustees have authority:

(g) To contract by way of lease, lease-purchase or otherwise, with any agency, department or other office of government or any individual, partnership, corporation, owner, other board of trustees, or other health care facility, for the providing of property, equipment or services by or to the community hospital

11

or other entity or regarding any facet of the construction, management, funding or operation of the community hospital or any division or department thereof, or any related activity, including, without limitation, shared management expertise or employee insurance and retirement programs, and to terminate said contracts when deemed in the best interests of the community hospital.

Miss. Code Ann. § 41-13-35(5)(g) (Rev. 2005).

¶31. Although the statute grants the Trustees authority to acquire property, we find nothing in its plain language that provides the Trustees authority to alienate property. Thus, we find the chancellor erred in concluding that the Trustees had authority to enter into the Agreements – which provided for the alienation of real property – without the Supervisors' approval.

¶32. Furthermore, even if the statute granted the Trustees authority to enter into the contracts, to Trustees failed properly to do so. The statutory language provides that the Trustees must contract in their own capacity and, in this case, the Trustees chose not to exercise that authority, but rather to sign the contracts as agents for the Supervisors.[12]

¶33. The record contains no evidence that the Board of Supervisors voted on the contracts or spread them on its minutes. This Court has clearly stated, on numerous occasions, that any act by a Board of Supervisors **must** be evidenced by an entry in its minutes in order to be valid. For instance, in ***Burt v. Calhoun***, 231 So. 2d 496 (Miss. 1970), this Court stated:

> "It is manifest that the board of supervisors of a county can only enter into an express contract by an order spread upon its minutes, and that there can be no such thing as a verbal or oral order of this board." No contract can be implied or presumed, it must be stated in express terms and recorded on the official

---

[12]Both Agreements clearly state: "This Agreement is entered into this the [date], by and between the Greene County Board of Supervisors (hereinafter "Owner"), through its Agent, the Board of Trustees of the Greene Rural Health Center (hereinafter "Agent"), and Corporate Management, Inc. (hereinafter "CMI")." All three parties signed both Agreements.

12

minutes as the action of the board of supervisors. The responsibility is placed on each person, firm or corporation contracting with a board of supervisors to see that the contract is legal and properly recorded on the minutes of the board.

*Id.* at 499 (quoting *Smith County v. Mangum*, 89 So. 913, 914 (Miss. 1921) and citing *Lee County v. James*, 174 So. 76 ( Miss. 1937)); see also *Jackson Equip. & Serv. Co. v. Dunlop*, 160 So. 734 (Miss. 1935); *Pearl Realty Co. v. State Highway Comm'n*, 154 So. 292 (Miss. 1934). *See also Gilchrist-Fordney Co. v. Keyes*, 74 So. 619 (Miss. 1917); *Lamar County v. Tally*, 77 So. 299 (Miss. 1917); *Marion County v. Foxworth*, 36 So. 36 (Miss. 1903).

¶34. Greene County submits, and CMI does not deny, that neither the Nursing Home Agreement nor the Hospital Agreement were ever properly "spread upon the minutes" of the Board of Supervisors. Thus, because neither the Supervisors nor the Trustees properly entered into the contracts with CMI, all other points on appeal, with respect to the merits of the case, are moot.

**II.**

¶35. Although not necessary for disposition of the merits of this case, we now address the chancellor's order removing I.D. Brown from the Board of Trustees and reinstating Larry Brown. One holding public office may not be removed from his or her position by an action to which he is not a party. In *Jackson Redevelopment Authority v. King, Inc.*, 364 So. 2d 1104 (Miss. 1978), this Court stated:

It is a very ancient and salutary principle of the common law, where a person claims to hold an office, his title shall not come in question in an action to which he is not a party; but while he holds the office de facto, his acts and doings therein will be deemed good.
. . .

13

> The incumbent cannot be impeached collaterally and indirectly; if he is in possession of the office, discharging its ordinary functions, his official acts are conclusive as to all persons interested or affected by them.

*Id.* at 1109-10. *See also* **Upchurch v. City of Oxford**, 17 So. 2d 204, 205 (Miss. 1944); **Rosetto v. City of Bay St. Louis**, 52 So. 785, 785 (Miss. 1910); **Cooper v. Moore**, 44 Miss. 386, 392-93 (1870).

¶36. CMI argues, nevertheless, that the chancellor had the right to reinstate Larry Brown to his position because the Supervisors' removal of him was unlawful. It argues that the Supervisors, and specifically Supervisor Marion Pierce, "usurped" the power of the GRHC Board of Trustees by coercing Larry Brown into resigning.

¶37. Even assuming *arguendo* the Supervisors did "usurp" the Trustees' power, the State, not CMI, had authority to seek removal of I.D. Brown and reinstate Larry Brown. This Court has stated:

> For the usurpation, or unlawful holding, or exercising its functions without lawful right, the person may be dealt with, and punished at the suit *of the state* . . . . If he is a usurper in possession without right, *the state*, whose authority he abuses, can move directly for his ejection and punishment.

**Cooper v. Moore**, 44 Miss. 386, 392-93 (1870) (emphasis added).

¶38. It is undisputed that neither the State of Mississippi nor I.D. Brown was a party to the underlying action, and neither is a party to this appeal. Thus, the chancellor erred in removing I.D. Brown from the Board of Trustees.

**III.**

¶39. The chancellor held CMI and the Trustees in contempt, finding that – by entering the October 15, 2007, contract – they interfered with the court's December 31, 2007, deadline

14

concerning the possible sale or lease of the hospital. The chancellor's deadline, however, emanated from agreements which we have found to be unenforceable. Furthermore, the order holding the Trustees and CMI in contempt did not provide for any sanctions. It merely held that they were in contempt of the final order and that they were to "cease and desist from entering into any further management contracts . . . ."[13]

¶40. Because we find today that the contracts were not binding, and because the contempt order resulted in no sanctions, we find the issue moot.

## CONCLUSION

¶41. We find Greene County was not bound by the Agreements with CMI, as it never properly entered into the Agreements. The fact that no agreements binding Greene County existed renders all other dispositive issues moot. We reverse the chancellor's order removing I.D. Brown from the Board of Trustees and reinstating Larry Brown, and we find the issue of contempt moot.

¶42. **REVERSED AND RENDERED**.

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., AND PIERCE, J., NOT PARTICIPATING.**

---

[13]The order did state that the Court would determine whether any damages, costs, or attorney's fees were appropriate after the Trustees and CMI produced the required financial statements. However, the record does not disclose that any sanctions were ever entered.