# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01298-SCT

*CORPORATE MANAGEMENT, INC.*

*v.*

*GREENE COUNTY, MISSISSIPPI*

DATE OF JUDGMENT:              07/01/2008
TRIAL JUDGE:                  HON. T. KENNETH GRIFFIS, JR.
COURT FROM WHICH APPEALED:   GREENE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     DARREN E. GRAY
                                JOHN R. REEVES
                                JOHN JUSTIN KING
ATTORNEYS FOR APPELLEE:      CHRISTOPHER GARRETT HENDERSON
                                HEBER S. SIMMONS, III
NATURE OF THE CASE:           CIVIL - CONTRACT
DISPOSITION:                  AFFIRMED - 12/03/2009
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.

## CHANDLER, JUSTICE, FOR THE COURT:

¶1.    This is the third appeal in a contract dispute involving the management of a county hospital and nursing facility by Corporate Management, Inc. (CMI), a medical management company, and Greene County, Mississippi, through its Board of Supervisors (Greene County). CMI appeals from a July 1, 2008, judgment, in which the special chancellor determined that Greene County had complied with the statutory requirements necessary for offering a lease on a community hospital, and that CMI was in contempt, assessing attorneys' fees in the amount of $7,500. We find that the special chancellor correctly found that Greene

County had complied with the statutory provision of Mississippi Code Section 41-13-15 (Rev. 2009). In addition, this Court affirms the special chancellor's finding that CMI was in contempt and the assessment of attorneys' fees in the amount of $7,500. Accordingly, the Court affirms the special chancellor's judgment in toto.

**FACTS**

¶2. This case has a long history of litigation, resulting in three appeals. CMI and the trustees of the Greene Rural Health Center ("GRHC trustees" and "GRHC') entered into two contracts for the management of Greene County's community hospital and nursing home in early 2005. The litigation initially stemmed from these contracts between CMI and the trustees and concerned whether the contracts were binding and enforceable on Greene County.

¶3. After entering into the contracts with CMI, the GRHC trustees voted to cancel CMI's contract without explanation, at an October 15, 2005, meeting. Subsequently, at the October 31, 2005, GRHC trustee meeting, the GRHC trustees voted to reinstate CMI. Thereafter, CMI filed a complaint seeking an injunction, damages, and other relief.

¶4. This Court appointed a special chancellor to the case. The special chancellor issued a second amended final judgment, filed on April 20, 2007, determining that the hospital agreement and the nursing home agreement (hereinafter "the Hospital Agreement" and "the Nursing Home Agreement") between CMI and the GRHC trustees were valid and enforceable contracts. The second amended final judgment enumerated provisions for various duties and responsibilities by the parties. While the special chancellor ordered that the second amended final judgment be a Rule 54(b) final judgment, the trial court retained jurisdiction for the purpose of enforcement of its judgment. *See* Miss. R. Civ. P. 54(b).

2

¶5. The special chancellor also ruled on Greene County's motion for contempt against CMI and the GRHC trustees for allegedly interfering with the second amended final judgment by entering into an October 2007 lease agreement, and for CMI's alleged failure to produce documents in compliance with provisions of the second amended final judgment. On December 13, 2007, the special chancellor determined that CMI and the GRHC trustees were in contempt for the execution of the October 15, 2007, lease contract and agreement, declared the agreement null and void, and ordered the parties to cease and desist from entering into additional contracts. The special chancellor also ordered CMI to produce all documents in compliance with paragraphs 11(3)-(4), 13, and 15 of the second amended final judgment within five days and retained jurisdiction to determine whether damages, costs, or attorneys' fees were appropriate after a review of the documents.

¶6. CMI and Greene County appealed from the April 20, 2007, and December 13, 2007, rulings. This Court consolidated the two appeals styled *Greene County, Mississippi, John Marshall Eubanks, Tommy Roberts and Marion Pierce v. Corporate Management, Inc.*, Cause no. 2007-CA-00693-SCT, and *Corporate Management, Inc. v. Greene County*, Cause No. 2008-CA-00122-SCT.

¶7. The basis of this third appeal to the Court is the special chancellor's July 1, 2008, judgment enforcing provisions within the second amended final judgment. Pursuant to his retained jurisdiction and while the first and second appeals were in the appellate process, the special chancellor made subsequent rulings on the issue of compliance with provisions of the second amended final judgment, resulting in the July 1, 2008, judgment. The special chancellor determined that (1) Greene County substantially had complied with paragraphs 3

3

and 4 of its second amended final judgment; (2) Greene County had complied with Mississippi Code Section 41-13-15; and (3) CMI was in contempt of paragraphs 11(3) and (4) of the second amended final judgment by failing to produce documents to Greene County and was assessed $7,500 in attorneys' fees. CMI appealed from this ruling.[1]

¶8. Shortly after the parties finished the briefing period in this third appeal, cause number 2008-CA-01298-SCT, this Court handed down its decision on the two pending and consolidated appeals.[2] *See Greene County v. Corporate Management, Inc.*, 10 So. 3d 424 (Miss. 2009).[3] In *Greene County*, this Court determined that the dispositve issue was whether the hospital and nursing home agreements entered into by CMI and the Greene County Board of Trustees were binding on the Board of Supervisors and, thus, Greene County. *Id*. at 429-30. This Court determined that the trial court erred by finding that the trustees had authority

---

[1] Greene County decided to lease the facilities, sent out Requests For Proposals (RFPs), received several responses, and accepted George Regional Health System's (George Regional) proposal for long-term lease and management of the facilities. Greene County and George Regional entered into a signed lease agreement on October 22, 2007. The lease was to go into effect on January 1, 2008, and the management of the hospital was to change from CMI to George Regional.

[2] *Greene County, Mississippi, John Marshall Eubanks, Tommy Roberts and Marion Pierce v. Corporate Management, Inc.*, Cause No. 2007-CA-00693-SCT and *Corporate Management, Inc. v. Greene County*, Cause No. 2008-CA-00122-SCT.

[3] The Court handed down its decision in the consolidated appeal on May 28, 2009. The mandate issued on June 18, 2009.

4

to enter into the agreements, which alienated real property, without the approval of the Board of Supervisors. *Id*. at 431. Thus, the Court viewed the agreements as nonbinding, rendering all other dispositive issues moot. *Id*. at 433.

¶9. Additionally, this Court addressed the special chancellor's rulings on contempt. *Greene County*, 10 So. 3d at 432. While the main argument centered on whether the October 15, 2007, contract between CMI and the GRHC trustees interfered with the terms of the second amended final judgment, the opinion also noted the special chancellor's decision regarding contempt for the failure to produce financial statements. *Id*. at n.13. Ultimately, however, the Court determined that "[b]ecause we find today that the contracts were not binding, and because the contempt order resulted in no sanctions, we find the issue moot." *Id*.

¶10. It is from this procedural context that this Court now has the third appeal before it.

## DISCUSSION

¶11. This Court has a limited standard of review in appeals from the chancery court. *Tucker v. Prisock*, 791 So. 2d 190, 192 (Miss. 2001). The standard of review for a chancellor's decision is abuse of discretion. *Creely v. Hosemann* 910 So. 2d 512, 516 (Miss. 2005). An appellate court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13 -14 (Miss. 2007) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)). However, on questions of law, appellate courts employ a de novo standard of review. *Id*.; *Tucker*, 791 So. 2d at 192.

5

**1.      Jurisdiction**.

¶12.    As a side argument, CMI generally raised the issue that the trial court lacked jurisdiction, since the parties had two appeals pending with this Court at the time the special chancellor entered the 2008 judgment.  CMI contends that the 2008 judgment erroneously modified, altered, amended, and broadened the second amended final judgment without jurisdiction.  This issue is without merit.

¶13.    Filing a notice of appeal transfers jurisdiction from the trial court to an appellate court, thereby removing the trial court's authority to amend, modify, or reconsider its judgment.  *McNeil v. Hester*, 753 So. 2d 1057, 1075 (Miss. 2000); *Bert Allen Toyota, Inc. v. Grasz*, 947 So. 2d 358, 362-63 (Miss. Ct. App. 2007).  In other words, the appeal removes the case *ipso facto* to the appellate courts.  *Id*.  When an appeal has no supersedeas bond, a party may execute on the judgment.  *McNeil*, 753 So. 2d at 1076.  However, the lower court cannot "broaden, amend, modify, vacate, clarify, or rehear the decree."  *Id*.  On the other hand, when an appeal has a supersedeas bond it effectively suspends the judgment.  *Matter of Estate of Moreland*, 537 So. 2d 1345, 1348 (Miss. 1989).  Therefore, "enforcement of the rights declared by the decree are suspended until the appeal is determined."  *Id*.  When a trial court's order broadens, amends, modifies, vacates, clarifies, or rehears a decree, "it must be vacated as null and void because it exceeds the subject matter jurisdiction of the lower court."  *Id*.

¶14.    Here, the record reveals no supersedeas bond, nor does CMI claim that one exists.  The trial court explicitly retained jurisdiction in the second amended final judgment and in the December 13, 2007, contempt order for the purpose of enforcing its judgments.  Further, the special chancellor's 2008 judgment merely enforced provisions of the second amended final

6

judgment and did not broaden, amend, modify, vacate, clarify, or rehear the second amended final judgment. In the 2008 judgment, the trial court determined "[t]hat Greene County timely and substantially complied with the requirements of Paragraphs 3 and 4 of the Second Amended Final Judgment and the statutory requirements of Miss. Code Ann. § 41-13-15(7), in offering the GRHC facility for lease." On the issue of contempt, the 2008 judgment stated:

> That CMI shall be and hereby is found to be in contempt for its failure to comply with paragraphs 11(3) of the Court's Final Judgment, and that as a result thereof Greene County is entitled to an award of attorney's fees and costs in the amount of $7,500.00. Said amount shall be paid to Greene County, through its attorney on or before July 31, 2008.[4]

¶15. The rest of the 2008 judgment provides for the actions required to transfer management of the GRHC facility to George Regional and for continued documentation of financial statements from CMI for the period after December 31, 2007. By its terms, the 2008 judgment provides only for resolution for ongoing issues of moving the management and lease process forward for the parties. We find that this issue is without merit.

**2. Statutory compliance.**

¶16. As a preliminary matter, this Court's *Greene County* opinion determined that the trial court had erred by finding that the GRHC trustees had authority to enter into the agreements without the approval of the Board of Supervisors. *Greene County*, 10 So. 3d at 431. The Court viewed the agreements as nonbinding, rendering all other dispositve issues moot. *Id*. at 433. To the extent that CMI argues that the trial court erred by finding that Greene County complied with paragraphs 3 and 4 of the second amended final judgment pertaining to the

---

[4] The original judgment had an initialed correction changing the due date from July 15 to July 31, 2008. The correction was initialed by the special chancellor.

7

agreements between CMI and the GRHC trustees, or that the relief sought by CMI should be the implementation of a long-term management contract, based on provisions in the agreements and incorporated into the second amended final judgment, these arguments are without merit, due to this Court's recent invalidation of the agreements in *Greene County*. *Greene County*, 10 So. 3d at 433

¶17.  CMI also contends that the trial court erred by finding that Greene County had complied with the statutory requirements of Mississippi Code Section 41-13-15 when Greene County had offered the nursing home and hospital for long-term lease.  While CMI seeks relief under the second amended final judgment and 2005 contracts, that being long-term management of the facilities, the relief is no longer available because of this Court's holding in *Greene County*.  Notwithstanding that CMI's requested relief is now foreclosed by this Court's *Greene County* opinion, CMI's statutory compliance arguments survive on appeal.

¶18.  CMI makes two statutory arguments on appeal.  First, CMI argues that George Regional gave inadequate Request for Proposal (RFP) statements.  Second, CMI argues that Greene County failed to comply with publication requirements.

¶19.  The Public Health Law covers a wide variety of health issues.  *See* Miss. Code Ann. §§ 41-1-1 to 41-115-1 (Rev. 2009).  Included in the title's provisions is a section concerning community hospitals within our State.  *See* Miss. Code Ann. §§ 41-13-1 to 41-13-107 (Rev. 2009).  Chapter 13 of Title 41 provides the procedures for operating and maintaining community hospitals.  *Id*.  While many of the former statutes in this chapter are now repealed,

8

other current provisions provide an "Editor's Note" following the statute.[5] The main statute at issue in this appeal is Mississippi Code Section 41-13-15 and whether the special chancellor correctly determined that Greene County complied with the statutory provisions of Section 41-13-15 (7), (8), and (9). The special chancellor, in his 2008 order determined that Greene County "substantially" complied with Section 41-13-15. The Editor's Note provides for the liberal construction of Section 41-13-15 and states:

> Laws of 1985, ch. 511, §§ 1, 10, eff from and after July 1, 1985, provide as follows:
>
> "SECTION 1. It is the intent and purpose of this act to clarify and expand the power of boards of trustees of community hospitals so as to allow such community hospitals to operate efficiently, to offer competitive health care services, to respond more effectively to new developments and regulatory changes in the health care area and to continue to serve and promote the health and welfare of the citizens of the State of Mississippi. **This act shall be liberally construed so as to give effect to such intent and purpose.**"

Miss. Code Ann. § 41-13-15 (emphasis added) (*See* Laws 1985, Ch. 511, § 2, eff. July 1, 1985; Laws 2002, Ch. 441, § 1, eff. July 1, 2002). With the Editor's Note as guidance to this Court concerning the Legislature's intent, a liberal construction of Section 41-13-15 is appropriate. The special chancellor's determination that Greene County "substantially" complied with the statute is more accurately described as in compliance given a *liberal construction* of the statute.

A.   **Requests for Proposals**

---

[5] This Editor's Note follows Mississippi Code Sections: 41-13-10; 41-13-11; 41-13-15; 41-13-29; 41-13-35; 41-13-36; 41-13-38; and 41-13-47.

¶20.   This Court has reviewed the arguments asserted by CMI, and we find that they are without merit.   CMI asserts that George Regional failed to respond properly to certain Requests For Proposals (RFPs) advertised by Greene County, thus, implying that Greene County deviated from the RFP process by failing to follow the procedures provided in Miss. Code Section 41-13-15 and accepting George Regional's responses.   Greene County maintains that CMI failed to address this issue before the trial court, thus, the trial court never had an opportunity to rule on the issue.

¶21.   A review of the transcript of the January 23, 2008, hearing reveals that CMI generally argued that  George Regional had failed to respond adequately to the RFPs propounded by Greene County.  However, CMI did not argue the same issues at the January 23, 2008, hearing that it expressed in detail in its brief before this Court on appellate review.  At the hearing, CMI argued, in part:

By [Counsel for CMI]:      [I]t's obvious if you look at the RFP as published to the public and then you look at instances in which they accepted terms that were not considered – that were not put forth in the RFP. You can't do that. I mean for obvious reasons, you know and that law applies across the board in county government. . . . So they're constrained by the terms of the RFP.  So they did not therefore comply with 41-13-15.

In its brief, CMI cited four requests and four responses given by George Regional, claiming that the responses deviated from the RFP process.

¶22.   "Furthermore, when a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds." *Copeland v. Copeland*, 904 So. 2d 1066, 1073 (Miss. 2004) (citing *Burns v. State*, 729 So. 2d 203, 219 (Miss. 1998)).  An issue must first be

presented to the trial court before it is raised to the appellate court. *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (Miss. 2008). This Court has held that issues that are not raised at the trial court and which the trial court had no opportunity to rule on cannot be raised for the first time in the appellate court. *Fitch v. Valentine*, 959 So. 2d 1012, 1021 (Miss. 2007).

¶23. Notwithstanding the fact that CMI failed to make a specific argument concerning the RFPs at the hearing, we find that after a review of Greene County's RFPs and a review of the answers provided by George Regional, the issue is without merit. CMI claimed that at least four of the RFPs posed by Greene County had inadequate responses by George Regional. In the special chancellor's June 11, 2008, memorandum opinion, which again was not incorporated by reference into the 2008 judgment, the trial court stated:

> Second, GRHC and CMI argue that the request for proposals ("RFP") contains certain provisions which cannot be changed after issuance. Without providing specific reference to the deviations, GRHC and CMI argue that the proposal from George County Hospital contained items not listed in the RFP. The Court does not find any deviation in the proposal as compared to the RFP that would require the Court to grant the relief requested by GRHC and CMI.

We agree. CMI's assertions that George Regional failed to respond to the RFPs amounted to nothing more than a matter of tedious semantics. Accordingly, the trial court did not err by finding that Greene County complied with the RFP requirements of Section 41-13-15.

**B.    Publication**

¶24. On the second issue, failure to comply with publication requirements, we find that the trial court, given the liberal construction intended by the Legislature, correctly found that Greene County complied with the statutory requirements of Mississippi Code Section 41-13-15(7) by entering into a lease with George Regional. See Miss. Code Ann. § 41-13-15. CMI

11

argues a myriad of issues pertaining to the publication and execution of the lease between

Greene County and George Regional, however, CMI's arguments are without merit,

especially given the Legislature's intent to liberally construe the statute.[6]

¶25.    Mississippi Code Section 41-13-15(7), (8), and (9) provides the procedure for lease of

a community hospital.  The applicable portions of Section 41-13-15 state:

> (7)(a) Except as provided for in subsection (11) of this section, *owners may lease all or part of the property, real or personal, comprising a community hospital*, including any related facilities, wherever located, and/or assets of such community hospital, to any individual, partnership or corporation, whether operating on a nonprofit basis or on a profit basis, or to the board of trustees of such community hospital or any other owner or board of trustees, subject to the applicable provisions of subsections (8), (9) and (10) of this section. . . . *Such lease shall be subject to the express approval of the board of trustees of the community hospital*, except in the case where the board of trustees of the community hospital will be the lessee. . . .
>
> *If the owner wishes to lease a community hospital without an option to sell it and the approval of the board of trustees of the community hospital is required but is not given* within thirty (30) days of the request for its approval by the owner, *then* the owner may enter such lease as described herein on the *following conditions: A resolution* by the owner *describing its intention to enter such lease* shall be *published* once a week for at least three (3) consecutive weeks in at least one (1) newspaper published in the county or city, as the case may be, or if none be so published, in a newspaper having a general circulation therein.  The first publication of such notice shall be made not less than twenty-one (21) days prior to the date fixed in such resolution for the lease of the community hospital and the last publication shall be made not more than seven (7) days prior to such date. *If, on or prior to the date fixed in such resolution for the lease of the community hospital, there shall be filed with the clerk of the owner a petition signed by twenty percent (20%) or fifteen hundred (1500), whichever is less, of the qualified voters of such owner, requesting that*

---

[6] CMI argues (1) the RFPs were not properly answered (addressed in Section 1); (2) the lease was not presented to the Board of Trustees; and (3) the Board of Supervisors failed to follow publication requirements: (a) no publication seven days before the lease was to take effect; (b) lease was not presented to the Board of Trustees; (c) failure to publish correctly for twenty-one day period; and (d) Greene County cannot enter into a lease until after and election and voter approval.

12

*an election be called and held on the question of the lease of the community hospital, then it shall be the duty of the owner to call and provide for the holding of an election as petitioned for. In such case, no such lease shall be entered into unless authorized by the affirmative vote of the majority of the qualified voters* of such owner who vote on the proposition at such election. Notice of such election shall be given by publication in like manner as hereinabove provided for the publication of the initial resolution. Such election shall be conducted and the return thereof made, canvassed and declared as nearly as may be in like manner as is now or may hereafter be provided by law in the case of general elections in such owner. *If, on or prior to the date fixed in the owner's resolution for the lease of the community hospital, no such petition as described above is filed with the clerk of the owner,* <u>*then*</u> *the owner may proceed with the lease subject to the other requirements of this section.* Subject to the above conditions, the lease agreement shall be upon such terms and conditions as may be agreed upon and may make such provision for transfers of tangible and intangible personal property and operating funds and/or for the assumption of liabilities of the community hospital and for such lease payments, all as may be deemed appropriate by the owners.

. . . .

(8) Whenever any owner decides that it may be in its best interests to sell or lease a community hospital as provided for under subsection (7) of this section, the owner shall first contract with a certified public accounting firm, a law firm or competent professional health care or management consultants to review the current operating condition of the community hospital. The review shall consist of, at minimum, the following:

> (a) A review of the community's inpatient facility needs based on current workload, historical trends and projections, based on demographic data, of future needs.

> (b) A review of the competitive market for services, including other hospitals which serve the same area, the services provided and the market perception of the competitive hospitals.

> (c) A review of the hospital's strengths relative to the competition and its capacity to compete in light of projected trends and competition.

> (d) An analysis of the hospital's options, including service mix and pricing strategies. If the study concludes that a sale or lease should occur, the study shall include an analysis of which option

> would be best for the community and how much revenues should be derived from the lease or sale.

> (9) After the review and analysis under subsection (8) of this section, an owner may choose to sell or lease the community hospital. If an owner chooses to sell such hospital or lease the hospital with an option to sell it, the owner shall follow the procedure specified in subsection (10) of this section. If an owner chooses to lease the hospital without an option to sell it, it shall first spread upon its minutes why such a lease is in the best interests of the persons living in the area served by the facility to be leased, and it shall make public any and all findings and recommendations made in the review required under proposals for the lease, which shall state clearly the minimum required terms of all respondents and the evaluation process that will be used when the owner reviews the proposals. The owner shall lease to the respondent submitting the highest and best proposal. In no case may the owner deviate from the process provided for in the request for proposals.

Miss. Code Ann. § 41-13-15 (Rev. 2009) (emphasis added).

¶26.   "Our duty is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case." *Pope v. Brock*, 912 So. 2d 935, 937 (Miss. 2005). "[W]here statute is plain and unambiguous, there is no room for construction." *Kerr-McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 17 (Miss. 1995) (citing *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046 (Miss. 1980)). "When construing the meaning of a statute, we must look at the words of the statute." *Adams v. Baptist Mem'l Hosp.-Desoto, Inc.*, 965 So. 2d 652, 656 (Miss. 2007) (quoting *Pinkton v. State*, 481 So. 2d 306, 309 (Miss. 1985)).

¶27.   The statutory language of Section 41-13-15(7)(a) provides that an owner may lease a community hospital subject to the applicable subsections (8), (9), or (10). Miss. Code Ann. § 41-13-15(7) (Rev. 2009). However, if the owner decides to lease the community hospital without an option to sell, then approval of the board of trustees is required. Miss. Code Ann.

14

§ 41-13-15 (7). Should the board of trustees not give approval within thirty days of the request for approval by the owner, then the owner "may enter such lease" upon certain conditions. Miss. Code Ann. § 41-13-15 (7). Those conditions include publication of the lease for three weeks. Miss. Code Ann. § 41-13-15 (7). However, if a petition of the requisite number of qualified voters is filed with the clerk requesting an election, then, the owner has a duty to call and provide for an election. Miss. Code Ann. § 41-13-15 (7). "In such case, no such lease shall be entered into unless authorized by the affirmative vote of the majority of the qualified voters. . . ." Miss. Code Ann. § 41-13-15 (7). If no petition is filed, then the owner can proceed with the lease subject to the requirements of the section. Miss. Code Ann. § 41-13-15 (7).

¶28. It is undisputed that Greene County and George Regional entered into a signed lease agreement on October 22, 2007. The lease was to go into effect on January 1, 2008, and the management of the hospital was to change from CMI to George Regional. Again, CMI presents a number of instances where Greene County allegedly failed to comply with the statute.

¶29. Greene County sent out a list of RFPs in order to solicit responses for the operation of the facility. Pursuant to Section 41-13-15(8), Greene County had a certified accounting firm review the operating condition of the GRHC. While a point of contention, the chancellor determined that Greene County provided notice of its intention to lease the facility to the President of the GRHC Board of Trustees. *See* Miss. Code Ann. § 41-13-15(7)(a) (Rev. 2009). While argued by CMI as a prerequisite requirement, there is no statutory requirement that a representative of Greene County appear before the GRHC trustees and explain the

15

proposed lease. However, the GRHC trustees did not provide approval of the lease within thirty days. Therefore, Greene County passed a resolution describing its intention to enter such lease; to make the lease effective as of January 1, 2008; and published it once a week for at least three consecutive weeks in a county newspaper, *The Greene County Herald*.[7] However, prior to December 31, 2007, a petition was filed with the Greene County Circuit Clerk with the requisite number of signatures of Greene County qualified voters. The petition requested an election to resolve the issue of who should lease the community hospital. In accordance with the statute and because of the petition, Greene County called and held an election on the leasing of the facility. The election was held on March 25, 2008, and the voters of Greene County approved the lease. A majority of citizens voted to authorize Greene County to enter the proposed lease of the facility.

¶30.   After a review of the record, this Court finds that the chancellor's findings were not manifestly wrong, clearly erroneous, nor was an erroneous legal standard applied. The special chancellor's interpretation and application of the law was correct. Given the Legislature's decision to liberally construe many of the Title 41, Chapter 13 statutes, including Section 41-13-15, we cannot say that the special chancellor erred by finding that Greene County

---

[7] CMI contends that Greene County failed to properly advertise the resolution for the required period of time. Greene County requested that *The Greene County Herald* publish the resolution four times. George Turner, editor of the newspaper, testified that, due to the newspaper's error, the resolution was not published on the last publication date of December 27, 2007. However, the special chancellor determined that any issue with notice to the citizens of Greene County of the resolution and intent to lease the facility was resolved when a petition was filed and an election was held. Therefore, no harm resulted from the failure to publish the last time and any error in publication was cured when a petition and election occurred with the citizens' majority vote that George Regional should operate the facility.

16

complied with the provisions of Section 41-13-15. Therefore, on the issue of statutory compliance, this Court affirms the trial court's determination that Greene County complied with Section 41-13-15.

**3.    Contempt action.**

¶31.    CMI contends that the trial court erred by finding it in contempt of paragraph 11(3) of the second amended final judgment and imposing $7,500 in sanctions.

¶32.    "The decision to hold a person or entity in criminal or civil contempt also is a discretionary function of the trial court." *In re Spencer*, 985 So. 2d 330, 337 (Miss. 2008). Issues of contempt are questions of law to be decided on a case-by-case basis. *R.K. v. J.K.*, 946 So. 2d 764, 777 (Miss. 2007). "Regarding a determination of contempt, a trial court due to its temporal and physical proximity to the parties 'is infinitely more competent to decide the matter.'" *Id*. (quoting *Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990)).

¶33.    The first determination is whether the alleged contempt is civil or criminal in nature. *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002). "If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil." *Id*. When the action is for civil contempt, the standard of review is the manifest-error rule. *Id*.

¶34.    On assessing attorneys' fees for contempt, this Court has stated that the trial court is the proper authority to award the fees. *Mabus v. Mabus*, 910 So. 2d 486, 489 (Miss. 2005). This Court will not disturb a chancellor's award of attorneys' fees provided the lower court is not manifestly wrong. *Id*. Further, "[w]here a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should

17

be awarded to the wronged party." *Id*. (quoting *State v. Blenden*, 748 So. 2d 77, 87 (Miss. 1999)).

¶35. Paragraph 11 and subsection (3) of the second amended final judgment state:

> CMI is ordered to submit to a full accounting of the financial affairs of the Nursing Home and the Hospital of GRHC and Greene County. No later than forty-five days from the date of the Final Judgment, CMI shall provide to the President of the GRHC Board of Trustees, the following:
>
> 3.  An itemized statement showing all expenditures made by CMI from GRHC's reserve fund. The statement shall identify the date of the expenditure, the item(s) purchased, the amount paid, the reason for the purchase, and the place where the item(s) purchased was used.

Following CMI and the GCHC trustees entering into an October 15, 2007 lease agreement, Greene County filed a motion for contempt and other relief on October 22, 2007. In the December 13, 2007, order on motion for contempt and other relief, the trial court acknowledged that a number of the provisions in the second amended final judgment "set forth the rights, duties and obligations of the parties under the terms of the Agreements." The trial court included paragraph 11(3) as a provision in the second amended final judgment that provided for the rights, duties, or obligations under the original 2005 agreements between CMI and GRHC.

¶36. This Court, in *Greene County*, addressed the issue of contempt based on Greene County's motion for contempt and other relief filed on October 22, 2007, and the subsequent December 13, 2007 order. In *Greene County*, this Court stated:

> The chancellor held CMI and the Trustees in contempt, finding that–by entering the October 15, 2007, contract–they interfered with the court's December 31, 2007, deadline concerning the possible sale or lease of the hospital. The chancellor's deadline, however, emanated from agreements which we have found to be unenforceable. Furthermore, the order holding the

18

Trustees and CMI in contempt did not provide for any sanctions. It merely held that they were in contempt of the final order and that they were to "cease and desist from entering into any further management contracts. . . . " FN13

> FN13. The order did state that the Court would determine whether any damages, costs, or attorney's fees were appropriate after the Trustees and CMI produced the required financial statements. However, the record does not disclose that any sanctions were ever entered.

> Because we find today that the contracts were not binding, and because the contempt order resulted in no sanctions, we find the issue moot.

*Greene County*, 10 So. 3d at 432.

¶37.     Here, the judgment finding CMI in contempt and imposing sanctions was based on the trial court's July 2008 judgment. When the parties filed their briefs on the issue of contempt, this Court had not yet rendered its decision on the consolidated appeal in *Greene County*, therefore, neither party, nor the special chancellor, had the benefit of this Court's decision. By the language of this Court's decision in *Greene County,* finding the agreements to be nonbinding contracts, arguably, any contempt action and imposition of sanctions stemming from terms of the second amended final judgment, which in turn were based on the 2005 agreements between CMI and GRHC, are now moot. However, the 2008 judgment pertains to the subsequent and continued actions or nonactions by the parties that occurred *after* the second amended final judgment and the December 13, 2007, contempt order. Therefore, this Court may view these ongoing and continuous actions as subject to the special chancellor's retained jurisdiction to enforce his judgments, and the contempt issue was not moot due to the *Greene County* opinion. Since this Court has held that a party may be in contempt even though an order or decree later is determined to be erroneous, we will address whether the

19

trial court erred by finding that CMI was in contempt and that attorneys' fees were appropriate.

¶38. Notwithstanding this Court's decision in *Greene County*, the issue of contempt in this third appeal is based on CMI's alleged continuous noncompliance with the trial court's second amended final judgment. The 2008 judgment listed the pleadings that were before the special chancellor, in part, as:

    a.    The Motion for Contempt and Other Relief, and for Expedited Hearing filed by Greene County, on or about October 22, 2007;

    b.    The Supplement to Motion for Contempt and Other Relief filed by Greene County, on or about December 10, 2007;

    c.    The Supplement to Motion for Contempt and Other Relief filed by Greene County, on or about December 26, 2007;

The trial court issued a December 13, 2007, order finding CMI and GRHC in contempt for interfering with the second amended final judgment and failure to produce documents in accordance with the second amended final judgment. This order was the subject of the second appeal as noted above.

¶39. After the December 13, 2007, order, Greene County filed another supplement to its motion for contempt and other relief on December 26, 2007. Therefore, at least some of the pleadings concerned allegations of continued contempt for failure to produce documents pursuant to the trial court's second amended final judgment. The trial court held the motion for contempt in abeyance in its December 28, 2007, order. A hearing also was conducted on January 23, 2008. Again, the trial court held the motion for contempt in abeyance to allow time for a Rule 30(b)(6) deposition from a CMI financial officer to determine what was

ordered to be produced under the second amended final judgment. Thereafter, Thomas Kuluz, chief financial officer for CMI, gave deposition testimony on the production of documents.

¶40. While not incorporated by reference into the 2008 order, the special chancellor issued a June 11, 2008, memorandum opinion in which the special chancellor addressed the issue of contempt. In the memorandum opinion, the trial court stated:

29. On December 26, 2007, Greene County served a Supplemental Motion for Contempt that asked for relief due to CMI's failure to comply with paragraphs 11(3)-(6), 12, 13 and 15 of the final judgment. CMI responds that it has complied with the final judgment and provided the documents to GRHC.

30. According to Thomas Kuluz, CMI's 30(b)(6) designee and Chief Financial Officer, CMI has admitted that it has not produced the documents the Court required be produced in paragraph 11(3):

An itemized statement showing all expenditures made by CMI from GRHC's reserve fund. The statement shall identify the date of the expenditure, the item(s) purchased, the amount paid, the reason for the purchase, and the place where the item(s) purchased is currently located or the area of operation where the item(s) purchased was used.

Further, the Court has not seen this document or any attempt to comply with paragraph 11(3) and provided the "itemized statement" that was required.

Based on the special chancellor's review, CMI failed to provide the required documentation designated under the second amended final judgment. Thereafter, in the 2008 order, the trial court stated:

10. That CMI shall be and hereby is found to be in contempt for its failure to comply with paragraph 11(3) of the court's Final Judgment, and that as a result thereof Greene County is entitled to an award of attorney's fees and costs in the amount of $7,500.00. Said amount shall be paid to Greene County, through its attorney on or before July 31, 2008.

21

11.	CMI shall have until 5:00 p.m. on July 31, 2008, to produce an itemized statement showing all expenditures made by CMI from GRHC's reserve fund. The statement shall identify the date of the expenditure, the item(s) purchased, the amount paid, the reason for the purchase, and the place where the item(s) purchased is currently located or the area of operation where the item(s) was used. CMI shall have until 5:00 p.m. on July 31 to produce the statements and information required. If the statement is not produced, CMI shall be fined $500.00 per day until such time as the statement and information is produced.

¶41. This Court, in the case of *In re Contraction, Exclusion and Deannexation of City of Grenada*, 876 So. 2d 995, 1006 (Miss. 2004), determined that a city's failure to comply with a chancellor's judgment was not excused by this Court's later determination that the chancellor's ruling was erroneous. Likewise, in *Stacy v. Ross*, this Court held that "In short, unless we can say that a judgment was void ab initio, one bound by it must either comply or gain relief from an appropriate court on the pain of contempt." *Stacy v. Ross*, 798 So. 2d 1275, 1283 (Miss. 2001). This Court has held that even when an order of decree was erroneously or improvidently granted, a party cannot use the errors as a defense to disobey the provisions of the court order. *Ladner v. Ladner*, 206 So. 2d 620, 623 (Miss. 1968) (overruled on other grounds) (citing Griffith, Mississippi Chancery Practice § 668 (2d ed. 1950)); *Ellis v. Ellis*, 840 So. 2d 806, 811 (Miss. Ct. App. 2003) ("The fact that such order is erroneous or irregular or improvidently rendered does not justify a person in failing to abide by its terms"). The Court further stated:

> It is only where the order or decree is void, or where there was absolutely no jurisdiction under any circumstances, or where there is no state of facts which make it, or the part charged to have been disobeyed, any other than utterly of no force, that any answer attacking the decree itself is allowed,– it is no defense whatever that the decree is erroneous so long as not void.

22

*Ladner*, 206 So. 2d at 623 (quoting Griffith, Mississippi Chancery Practice § 668 (2d ed. 1950)).

¶42.   The *Greene County* opinion did not void the second amended final judgment or the December 2007 contempt order. Instead, this Court determined that the underlying 2005 contracts between CMI and the GRHC trustees were invalid for lack of authority by Greene County. Consequently, certain issues on the first and second appeal were moot since the arguments proposed by the parties were based on an assumption that the trial court correctly determined that the 2005 contracts were valid and enforceable.

¶43.   The second amended final judgment obligated CMI to provide documentation in accordance with paragraph 11. The special chancellor retained jurisdiction to enforce the provision of the second amended final judgment. After reviewing the evidence, the special chancellor determined that CMI had failed to comply with paragraph 11 of the second amended final judgment and awarded attorneys' fees. This Court has held that the trial court is more competent to decide matters of contempt due to its temporal and physical proximity. Here, the trial court retained jurisdiction to enforce its judgments. We cannot say that the trial court was manifestly wrong in its determination that CMI failed to provide required documentation pursuant to the second amended final judgment nor that the trial court was manifestly wrong by assessing attorneys' fees where one party intentionally failed to provide required documentation resulting in needlessly expending time and money on the matter by opposing counsel. This Court affirms the special chancellor's finding of contempt against CMI and award of $7,500 in attorneys' fees to Greene County.

## CONCLUSION

¶44. The trial court correctly determined that Greene County had complied with Mississippi Code Section 41-13-15(7) when the County offered the hospital for lease. In addition, the trial court did not err by finding that CMI was in contempt for failure to provide documentation pursuant to the trial court's second amended final judgment and, consequently, the award of attorneys' fees for the contempt action was proper. Accordingly, this Court affirms the judgment of the Greene County Chancery Court.

¶45. **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR AND KITCHENS, JJ., CONCUR. PIERCE, J., NOT PARTICIPATING.**