IRVING, J.,
for the Court:
¶ 1. This appeal arises out of a settlement agreement between Michael Graziosi and his former employer, the City of Jackson, Mississippi (the City). The Hinds County Chancery Court found that the City did not violate the settlement agreement in its termination of Graziosi’s employment. Feeling aggrieved, Graziosi appeals and asserts that: (1) his termination should be controlled by Mississippi contract law, (2) an arbitrary and capricious standard was erroneously applied by the chancellor, and (3) the chancellor erred in finding that the City acted in good faith when it terminated Graziosi’s employment.
FACTS
¶ 2. Graziosi began working for the City as a firefighter in 1988. In November 2002, he was placed on leave without pay, and his employment was terminated by the City in May 2005.[1] Thereafter, Graziosi filed a wrongful-termination claim with the City’s Civil Service Commission. The Commission affirmed Graziosi’s termination but found that he should have been *320 paid while on leave and consequently awarded him a judgment of more than $75,000 in back pay.
¶ 3. In September 2007, Graziosi and the City entered into a settlement agreement. The agreement stated, among other provisions, that Graziosi would be paid only $45,000 of the $75,000 judgment against the City; in return, the City would reemploy Graziosi as a firefighter at his pri- or rank of captain. However, the first twelve months of Graziosi’s re-employment would be a probationary period, during which Graziosi would have no recourse to the Commission for any discipline enacted against him. The agreement indicated that the City would act in good faith in the imposition of any discipline; furthermore, the City’s Mayor would be required to approve of any severe disciplinary measures, such as termination. Pursuant to those terms, Graziosi was reinstated as a captain with the City’s fire department on September 15, 2007.
¶ 4. Graziosi worked for the City without incident for approximately two months, until November 13, 2007. On that evening, Graziosi and other firefighters attended a union meeting in Jackson. Graziosi was off-duty at the time, and the meeting was held at a location that was not owned by the City. It is uncontradicted that Graziosi and another firefighter, Travis Frazier, got into an argument at the meeting. However, Graziosi contends that the altercation remained completely verbal, whereas Frazier claims that Graziosi punched him in the side of the head. It is undisputed that Graziosi was escorted from the building by another firefighter, Brandon Falcon, after the altercation. Frazier meanwhile called 911 to report that he had been assaulted by Graziosi. Officer Deidre Jefferson responded to the call and spoke with Frazier, who related that he had been hit on the left side of his head by a fellow firefighter. Officer Jefferson observed that Frazier was rubbing his left temple and complained of swelling in that location. After shining her flashlight on Frazier, Officer Jefferson observed redness around his left temple area.
¶ 5. On November 17, 2007, Graziosi was served with a citation regarding the assault charge. Thereafter, at the direction of Jackson Fire Department Chief Vernon Hughes, Gregory Travis, the Chief Investigator in the Fire Department’s Internal Affairs Division (IAD), began an investigation into the union meeting incident.
¶ 6. As part of the IAD’s investigation, Frazier, Graziosi, Falcon, and Patrick Ar-món, another firefighter who witnessed the November 13 altercation, were all interviewed. During his interview, Frazier stated that he had been hit on the right side of his head by Graziosi. Frazier was not asked about this discrepancy from his statement on November 13, when he told Officer Jefferson that he was hit on the left side of his head. Graziosi maintained his innocence during his interview. Neither Falcon nor Armón would discuss the altercation with the investigators. The IAD also reviewed Officer Jefferson’s police report. It appears from the record that the IAD was aware that Frazier had sought medical attention following the altercation, but it did not review any actual medical records. Chief Investigator Travis compiled an IAD file regarding the incident between Graziosi and Frazier; the file was given to Chief Hughes, as was Chief Investigator Travis’s conclusion that Graziosi had physically assaulted Frazier.
¶ 7. Thereafter, on April 10, 2008, Gra-ziosi’s employment was terminated; he received notice of the termination by means of a hand-delivered letter. On September 3, 2008, Graziosi was tried before the Hinds County Justice Court on the assault charge and was acquitted. At the trial, *321 both Falcon and Armón testified on Gra-ziosi’s behalf and stated that Graziosi had not assaulted Frazier.[2] Officer Jefferson did not testify at the trial.
¶ 8. Graziosi filed for unemployment benefits following his termination and was initially denied benefits. On September 17, 2008, however, after an appeal by Graziosi, an administrative law judge with the Mississippi Department of Employment Security found that the City had not proven that Graziosi was discharged for misconduct as that term is defined in Mississippi’s unemployment-compensation law. The City was consequently ordered to pay unemployment benefits to Graziosi.
¶ 9. On October 9, 2008, Graziosi filed a petition in the Hinds County Chancery Court requesting that the City be forced to abide by the 2007 settlement agreement. After hearing testimony from Graziosi, Falcon, Armón, Chief Hughes, Chief Investigator Travis, Frazier, and Officer Jefferson, the chancery court ruled in favor of the City, finding that the City had acted in good faith in terminating Graziosi.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. We have “a limited standard of review in appeals from [a] chancery court.” Corporate Mgmt., Inc. v. Greene County, 23 So.3d 454, 459(11) (Miss.2009) (citing Tucker v. Prisock, 791 So.2d 190, 192(10) (Miss.2001)). A chancellor’s factual findings will not be disturbed if they are “supported by substantial evidence.... ” Id. (quoting Biglane v. Under the Hill Corp., 949 So.2d 9, 13-14(17) (Miss.2007)). “However, on questions of law, appellate courts employ a de novo standard of review.” Id. (quoting Biglane, 949 So.2d at 14(17)).

1. Effect of Contract Law

¶ 12. In this issue, Graziosi claims that the chancellor erred when she found that Graziosi was an at-will employee who could be terminated at any time, for any reason. We agree that the chancellor erred in so finding; at least for the first year of Graziosi’s employment with the City, Graziosi was hired pursuant to a contract, specifically the 2007 settlement agreement, and his status was defined by that contract.
¶ 13. Although we agree that the chancellor erred in finding that Graziosi was an at-will employee, we find no merit to this issue. The chancellor’s conclusion regarding Graziosi’s status as an at-will employee was essentially dicta, as the chancellor went on to find that the City acted in good faith in disciplining Graziosi, which was what was required of the City according to the settlement agreement. The chancellor’s finding regarding whether the City acted in good faith is supported by substantial evidence.

2. Application of Arbitrary and Capricious Standard

¶ 14. In her opinion, the chancellor discussed the implied covenant of good faith and fair dealing that attaches to parties to a contract. The chancellor then ultimately concluded that: “the City of Jackson followed established procedures in its termination of Graziosi. This [cjourt is also persuaded that the City of Jackson acted with substantial evidence and thus its actions were not arbitrary and capri *322 cious. The City of Jackson acted in good faith and fair dealing.” (Emphasis added). Also included in the chancellor’s opinion is an analysis of the steps that the City took before terminating Graziosi’s employment.
¶ 15. In her analysis, the chancellor stated the following, in part, regarding whether the City’s decision was arbitrary and capricious: “Graziosi claims that the City of Jackson terminated him with no credible or verifiable evidence to support its decision[,] thereby rendering his termination arbitrary and capricious. This [c]ourt disagrees.” Therefore, it appears that the chancellor felt the need to discuss whether the City’s decision was arbitrary and capricious in response to Graziosi’s arguments.
¶ 16. The proper standard that should have been applied by the chancery court, pursuant to the agreement between Gra-ziosi and the City, was whether the City acted in good faith in exercising discipline against Graziosi. The chancellor determined that the City had acted in good faith in terminating Graziosi’s employment, a conclusion that we affirm. Any discussion of whether the City acted arbitrarily or capriciously was mere dicta and was in response to Graziosi’s own arguments.
¶ 17. This contention of error is without merit.

3. Dealing in Good Faith

¶ 18. Graziosi contends that the City did not act in good faith in terminating his employment. He specifically attacks the City’s reliance on its IAD investigation, the chancellor’s finding that the City used Frazier’s medical records before terminating Graziosi’s employment, and the City’s use of Officer Jefferson’s police report. Graziosi places great emphasis on the fact that Frazier stated to the IAD that he was struck on the right side of his head, while he stated at all other times that he was hit on the left side of his head.
¶ 19. We agree with the chancellor’s finding that the City acted in good faith. In fact, it appears from the record before us that, as a probationary employee, Gra-ziosi could have been terminated solely on the basis of the assault complaint to the police. However, the City went one step further and conducted an internal investigation of the altercation. This Court refuses to impute ill will to the IAD’s investigation merely because of a discrepancy in Frazier’s statements. Frazier was consistent in his story that Graziosi approached him from behind before striking him. Furthermore, the City had Officer Jefferson’s police report, wherein she indicated that she observed redness around Frazier’s left temple. The City even gave Gra-ziosi a chance to tell his side of the story to investigators. Essentially, the IAD investigation included Graziosi’s side of the story, Frazier’s version of events, and Officer Jefferson’s police report. If the investigators found Frazier’s claims more credible than Graziosi, they were entitled to do so. There is no evidence in the record before this Court that the investigation was conducted without good faith on the part of the City.
¶20. Graziosi also complains that the City did not suspend him without pay and wait for the outcome of his criminal trial. As already discussed, Graziosi was acquitted at his criminal trial, which took place after the termination of his employment with the City. Simply put, the City was not required to wait for the outcome of Gra-ziosi’s criminal trial. While there was testimony to the effect that other firefighters accused of criminal misconduct had been placed on leave without pay while then-cases went to trial, Graziosi was a probationary employee. He was not entitled to be placed on leave without pay, nor is the *323 City bound by the outcome of his criminal trial.
¶ 21. This contention of error is also without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. LEE, P.J., NOT PARTICIPATING.

. It is not clear from the record why Graziosi was placed on leave without pay. Some documents in the record indicate that Graziosi was terminated in June 2005 rather than May 2005.

. The record contains no explanation as to why Falcon and Armón, both eyewitnesses to the incident, were unwilling to testify in the investigation conducted by Officer Jefferson but were willing to do so in the criminal proceedings.